THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AUGUSTA ZYMANTAS, Defendant-Appellant.

First District (5th Division)   No. 1—87—1504

Opinion filed November 9, 1989.

56

PINCHAM, J., specially concurring.

Bryan David Schultz, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and William B. Schiller, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant was convicted of syndicated gambling and sentenced to two years' probation. He then appealed his conviction, contending that the trial court erred in denying his motion to quash his arrest and suppress evidence, and in denying him an evidentiary hearing to controvert the veracity of the officer's complaint for the search warrant. This court reversed the judgment of the trial court and remanded the cause with directions to grant defendant an evidentiary hearing to challenge the officer's affidavit. *People v. Zymantas* (1986), 147 Ill. App. 3d 420.

Briefly, the facts underlying defendant's arrest are as follows. On April 15, 1982, Chicago police officer Patrick Chambers subscribed and swore to a complaint for a search warrant to search "August Zymantas M/W and 6157½ North Leavitt Avenue, *** Chicago, Illinois, *** and seize *** Sports Wagers, Sport Lines, Slough Sheets all USC comingled with gambling contraband and all other related gambling material used or kept for illegal gambling and Illinois Bell Telephone #274-4967." Chambers also alleged in the complaint that on April 14, 1982, a reliable informant told him that he had placed basketball wagers with a male known to him as "Augie" over Illinois Bell telephone number 274-4967, that he overheard the informer placing wagers over telephone number 274-4967 on April 14 and 15, 1982, and that *"[t]he affiant checked with Illinois Bell Telephone Security, and found that Illinois Bell Telephone #274-4967 is register[ed] to August Zymantas at 6157½ N. Leavitt Ave.*, in the City of Chicago." (Emphasis added.) The warrant issued, and on April 16, 1982, Zymantas was arrested at his home at 6157½ North Leavitt. Defendant was subsequently indicted and convicted. He appealed his conviction to this court, and we reversed and remanded the cause with directions to grant defendant an evidentiary hearing to challenge Officer Chambers' affidavit.

At the first post-appeal hearing, the State indicated to the trial court that it would comply with this court's mandate by presenting

Chambers in court and arranging for the appearance of "somebody" from Illinois Bell Telephone Company (Illinois Bell). At that time, defendant also suggested that our mandate contemplated that in addition to Chambers and witnesses from Illinois Bell, the informant mentioned in Chambers' affidavit also be identified and called as a witness, since the only method available to him to impeach Chambers' averments that he had been supplied information by a confidential informant was to show that no informant existed. In rejecting defendant's suggestion, the trial court stated:

> "THE COURT: All that this opinion, and it isn't anything more than that, of the Appellate Court requires is the production of the officer for whatever interrogation might be conducted. It doesn't go beyond that and the defendant's opinions that there was no informant imposes no requirement upon the court or the State.
>
> MR. SCHULTZ [Defense Counsel]: The affidavit in general has been put in issue and there are—as indicated among the things that are included in the affidavit is the existence of the informant. The Appellate Court I think has determined as a matter of law that—.
>
> THE COURT: Counsel, the court has expressed its opinion. I don't engage in meaningless colloquy with lawyers who have an opinion different than the court.
>
> That is what will be done here. The officer will be produced and you will be able to examine him and that will be it."

Defendant subsequently filed a motion to compel disclosure of the informant and a motion requesting discovery of the names of persons from Illinois Bell who provided information regarding unpublished telephone numbers, as well as documentation of police department regulations which prescribed procedures for the acquisition of names and addresses connected with unpublished telephone numbers, and the actual procedures Chambers employed to obtain defendant's name and address. At the hearing on defendant's motion to compel disclosure of the informant, defendant argued that the motion should be granted because the case had been remanded for a full hearing on his motion to suppress and that within that motion he had alleged as false, or as having been included with reckless disregard of the truth, eight averments by Chambers in which he asserted as fact the existence of an informant from whom he had obtained information. In denying the motion, the court stated that the law recognizes a very "serious reason" for protecting informants and that that interest cannot be overridden by "a bland off-hand assertion" in a motion which claims that an in-

formant does not exist. The court further stated that an informant need only be produced when he is shown to have been present during the transaction of the charged conduct; apparently, the court determined that this was not the case under the circumstances.

In denying defendant's motion for discovery for the names of Illinois Bell employees and documentation concerning police regulations and the methods employed by Chambers in obtaining the information alleged in the search warrant complaint, which defendant argued was necessary to impeach Chambers' affidavit statements, the court stated that the motion was "a flight of fancy," a "thrashing about desparately trying to find something on the belief there must be something wrong here." The court then repeated that the hearing to be allowed defendant would consist of the examination of Chambers only.

At the subsequent hearing on defendant's motion to suppress, defendant called Officer Chambers. Chambers testified that on April 14, 1982, he had been investigating defendant, and he met with a confidential informant on the north side of Chicago. He further stated that on five or six other occasions the informant had provided information that led to arrests. On April 14 he made a telephone call in the presence of the informant to 274-4967, and then handed the receiver to the informant. He listened to the conversation as the informant placed a $200 basketball wager and $100 "on the over." On April 15 he dialed the same number and overheard the informant place another wager. Although Officer Chambers further testified that he had not made any other telephone calls in connection with the investigation, he later claimed he called Illinois Bell Security but did not recall the name of the person he had spoken to. He also stated that he did not submit a letter to Illinois Bell requesting information about an unpublished telephone number; that it was his normal procedure to contact Illinois Bell Security prior to preparing a search warrant but that he did not recall exactly what he had done on the day he prepared the instant warrant; that he did not remember the telephone number he dialed in the presence of the informant but that he had written it down in a notebook which he did not have with him in court; and that he learned from Illinois Bell the name of the person the telephone number belonged to, "August" Zymantas, as well as its location.

Defendant testified that on April 14 and 15, 1982, he did not have a telephone listed in his name, and he submitted evidence of two telephone bills made out to his wife for the telephone number at issue. Defendant also testified that he was at work on both days between 7 a.m. and 3:30 p.m., located 10 blocks away from his home, and the court took notice of the fact that the search warrant had been issued

by the magistrate at 3:45 p.m. on April 15. On redirect examination of defendant, defendant sought to place into evidence a letter prepared and signed by his employer's personnel administrator indicating that he was at work during the time to which he testified. Upon the State's objection, the court denied admission of the letter, and defendant made an offer of proof.

On the issue of the conflict between Illinois Bell's records showing defendant's wife as the subscriber of the unlisted number and Chambers' testimony, the court found that it was proper to infer from the evidence that defendant's name was recorded somewhere in Illinois Bell's records and that the information received by Chambers that August Zymantas was the subscriber to the service may have been given in error by Illinois Bell. The court went on to hold that it would take notice of a "common practice" for males to have their telephones listed in their wives' names but that the actual subscriber to the telephone is the employed male.

Based on the foregoing, the trial court concluded that nothing alleged in defendant's motion had been established by the evidence presented and no fact or circumstance had been adduced that would cause the court to alter its prior ruling which denied defendant's original motion to quash the search warrant and suppress the evidence. The case was then tried to the court on a stipulation as to the evidence and, on that basis, the court found defendant guilty of syndicated gambling. Defendant was then sentenced to two years' probation, which was considered served. The basis of this current appeal is defendant's contention that the trial court erred in denying his motion for discovery and for the production of the informant, as well as his motion to suppress. For the reasons set forth below, we reverse and remand the cause with directions.

■ Pursuant to *Franks v. Delaware* (1978), 483 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, the fourth amendment requires that a hearing be held where a defendant makes a substantial preliminary showing that an affiant police officer knowingly and intentionally, or with reckless disregard for the truth, made a false statement in a warrant affidavit. Here, in defendant's first appeal before this court, we found that defendant made such a showing, *i.e.*:

> "Officer Chambers' sworn statement that he checked with Illinois Bell security and found that telephone number 274-4967 was registered to Zymantas, the defendant's sworn denial that that telephone number was registered in his name and his corroborating Illinois Bell telephone bills were not 'a matter of very small consequence' as the trial court stated. This evidence,

along with the defendant's sworn denials and his allegations of Chambers' deliberate falsehood and reckless disregard for the truth, constituted an adequate and substantial preliminary showing to mandate granting the defendant an evidentiary hearing to challenge the allegations of the complaint for the search warrant." (*People v. Zymantas* (1986), 147 Ill. App. 3d 420, 435.)

Upon remand, the trial court interpreted our mandate to allow an examination of Chambers only, precluding defendant from seeking discovery or disclosure of the informant.

Our supreme court has not had an opportunity to address the question of whether an informant must be disclosed once a *Franks* hearing has been granted. (See *People v. Lucente* (1987), 116 Ill. 2d 133.) The *Franks* court itself did not so indicate, stating that "because we are faced today with only the question of the integrity of the affiant's representations as to his own activities, we need not decide, and we in no way predetermine, the difficult question whether a reviewing court must ever require the revelation of the identity of an informant ***." (*Franks*, 438 U.S. at 170, 57 L. Ed. 2d at 681, 98 S. Ct. at 2684.) The Court observed, however, that pursuant to *McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056, the due process clause of the fourteenth amendment does not require a State to reveal an informant's identity routinely, upon a defendant's mere demand, when there is ample evidence in the probable-cause hearing to show that the informant was reliable and his information credible. In *McCray*, that court also held that if a judge under all the circumstances doubts the credibility of a police officer, he may require that the informant be identified or even produced, and if the State fails to comply, the judge may grant the motion to suppress (*Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623.) It has also been held that where an informant helped to set up the commission of a crime and was present at its occurrence, his identity must be disclosed whenever his testimony may be relevant and helpful to a defendant's defense. *Portomene v. United States* (5th Cir. 1955), 221 F.2d 582; *United States v. Conforti* (7th Cir. 1952), 200 F.2d 365; *Sorrentino v. United States* (9th Cir. 1947), 163 F.2d 627.

■ There appears to be no fixed rule with respect to disclosure of informants and, according to *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, none would be justifiable. Strong public policy reasons favoring nondisclosure of an informant must be balanced against a defendant's need for disclosure in order to prepare his defense (*People v. Stoica* (1987), 163 Ill. App. 3d 660) or where dis-

closure is essential to a fair determination of a cause (*Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623). Whatever the circumstances, however, defendant has the burden of showing a need for disclosure. *People v. Stoica* (1987), 163 Ill. App. 3d 660.

In the present case, the State argues that the trial court properly denied defendant's motion to disclose the informant's identity because his request related to the preliminary issue of probable cause and not the fundamental question of his guilt or innocence and the court did not need to have the informant's identity disclosed in order to determine Chambers' credibility where Chambers' affidavit and testimony revealed that he had utilized his confidential informant five or six times which resulted in five arrests, the seizure of contraband, and three convictions.

We disagree under the circumstances here, which we find similar to the situation in *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623. In *Roviaro*, the petitioner was indicted for having violated the Narcotic Drugs Import and Export Act by having sold heroin to "John Doe," an informer, and transporting it knowing it to be unlawfully imported. John Doe had met with two Federal government agents and two Chicago police officers, one officer secreted himself in the trunk of Doe's car with a listening device, and Doe drove to another site in Chicago and met the petitioner. The petitioner entered Doe's car and they drove away. At another location, which turned out to be close to their original meeting place, Doe stopped the car. The petitioner then got out, walked a few feet to a nearby tree, picked up a small package, returned to the petitioner's car, making a motion as if depositing the package in the car, and then walked away to his nearby car. Subsequently, the petitioner was arrested, and the officer in the trunk of Doe's car related the foregoing and also stated that he had heard a conversation between the petitioner and Doe in which Doe greeted the petitioner, directed him where to drive, and instructed him to stop the car at some point. The petitioner then asked Doe about money owed him, and he advised Doe that he had brought him "three pieces this time." Once the car had stopped, the officer raised the hood of the trunk slightly and saw the petitioner walk to the tree, pick up a package, return to the car, and heard the petitioner say, "Here it is" and "I'll call you in a couple of days." Shortly after the petitioner's departure, the officer emerged from the trunk and found a package containing three envelopes of white powder.

Prior to and at trial, the petitioner requested disclosure of Doe, but the court, pursuant to the government's objection on the ground

that Doe was an informer and his identity privileged, denied the petitioner's request, notwithstanding the fact that when the petitioner was arrested and confronted with Doe, Doe denied he knew or had ever seen the petitioner. The United States Supreme Court reversed the trial court, finding that Doe's identity should have been disclosed because:

> "The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the defense. So far as petitioner knew, he and John Doe were alone and unobserved during the crucial occurrence for which he was indicted. Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. *Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent part in it.*
>
> * * *
>
> This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. Moreover, a government witness testified that Doe denied knowing petitioner or ever having seen him before. We conclude that, under these circumstances, the trial court committed prejudicial error in permitting the Government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure." (Emphasis added.) (353 U.S. at 63-65, 1 L. Ed. 2d at 647, 77 S. Ct. at 629-30.)

In a footnote, the *Roviaro* court further stated:

> "[W]e think that the court erred also in denying, *prior to the trial,* petitioner's motion for a bill of particulars, insofar as it requested John Doe's identity and address. Since Count I was then before the court and expressly charged petitioner with a sale of heroin to John Doe, it was evident from the face of the indictment that Doe was a participant in and a material witness to that sale. Accordingly, when his name and address were thus requested, the Government should have been required to supply that information or suffer dismissal of that count." (Emphasis added.) 353 U.S. at 65 n.15, 1 L. Ed. 2d at 647 n.15, 77 S. Ct. at 630 n.15.

■■ Although the instant case concerns a challenge to a warrant, we believe that the rationale and principles underlying the *Roviaro* decision are applicable here in order for a *fair determination of the cause, i.e.,* defendant's challenge to the search warrant. An examination of Chambers only was hardly a substitute for an opportunity to examine the informant who, according to Chambers, allegedly took part in the betting conversation for which defendant was charged, who had helped to set up the crime charged, and who played a prominent part in it. Like the situation in *Roviaro*, the informant here was the only witness in a position to amplify or contradict Chambers' testimony. Without any corroborating evidence, this was a *matter of perjury* by either Chambers or defendant, and in the interest of the truthfinding process and justice, the informant should have been disclosed.

We further observe that the State's argument that Chambers never alleged in the complaint for a search warrant that defendant was the receiver of the telephone calls does not change our conclusion and is without merit. Clearly the State believed defendant was the person receiving the telephone calls at issue based on the fact that the informant had given the name of "Augie" to Chambers, which he relied on when Illinois Bell allegedly told him that the telephone number was registered to "August Zymantas." We also note that the trial court, in rejecting defendant's argument prior to his first appeal that the search warrant did not particularly describe the person to be searched, held the same belief based on the following colloquy:

> "THE COURT: But *it was rational to assume that the Augie who spoke on the telephone is the Augusta Zymantas to whom the telephone is registered.*
>
> [DEFENSE COUNSEL]: So the court would rely in fact that the phone is registered—.
>
> THE COURT: *To Augusta Zymantas, who is called by caller, 'Augie.'* " (Emphasis added.)

■■ We further observe that the court, having denied defendant's request for disclosure of the informant relative to his challenge of the search warrant, should have allowed disclosure at trial, since the informant was a material witness, like the one in *Roviaro*. Apparently defendant's counsel stipulated to the evidence presented at the *Franks* hearing upon trial of the case to the court because the court had denied disclosure of the informant. Clearly, a denial of a request by defendant for disclosure of the informant at this stage of the proceedings would have been prejudicial error.

■■ We next address defendant's final argument with respect to the trial court's denial of his motion for discovery. In that motion,

defendant sought the name of the person Chambers spoke to at Illinois Bell who allegedly told him that the subject telephone number was registered to "August Zymantas," various documentation relative to police procedure, and Chambers' own method in obtaining unpublished telephone numbers. Since this court determined on appeal that the fact that the number was registered to defendant's wife and that that fact was not "a matter of very small consequence" as the trial court had previously determined, it follows that the trial court upon remand should have allowed defendant's motion for discovery relative to this alleged "matter of very small consequence." At the least, the fact that the telephone was registered to defendant's wife, and not defendant, created some lack of credibility attributable to Chambers' sworn statement. Moreover, in light of the fact that the State and the trial court erroneously believed the telephone was registered to "Augie" (*i.e.*, defendant), and that he received the telephone calls, as discussed above, defendant's motion for discovery should have been granted.

■ Similarly, the court should have admitted the letter from defendant's employer. We find the State's argument that the letter was not relevant because Chambers never alleged that defendant was at home to receive the informant's telephone calls is without merit for the reasons discussed above concerning the trial court's and the State's belief to the contrary.

■ Based on the foregoing, we hold that the trial court abused its discretion in denying defendant's motions for discovery and disclosure of the informant, as well as his request to introduce as evidence the letter from his employer. The hearing defendant received was no hearing at all and was not conducted to reach a fair determination of defendant's challenge to the search warrant. Accordingly, we reverse and remand the cause with directions that the court conduct a new evidentiary hearing and grant defendant's motions for discovery and disclosure of the informant and that it admit defendant's letter of employment into evidence. In remanding this cause, we express no opinion with respect to defendant's success or failure in the proceedings.

Reversed and remanded, with directions.

LORENZ, J., concurs.

JUSTICE PINCHAM, specially concurring:

I agree with the court's opinion, but because the record affirmatively establishes:

(1) the learned trial judge refused to comply with the man-

date of this court;

(2) the learned trial judge abandoned his duties as an impartial jurist and became an ardent advocate for the prosecution, in violation of constitutional due process; and

(3) the *Franks* evidentiary hearing defendant received was no hearing at all and it was not conducted to reach a fair determination of defendant's challenge to the search warrant, as the opinion concludes,

the cause should be remanded with directions that it be reassigned for any further proceedings to a judge other than Judge Thomas J. Maloney, who has twice erroneously ruled on the *Franks* motion, as was done in *People v. Gurga* (1988), 176 Ill. App. 3d 82 (No. 2).

In *People v. Gurga* (1986), 150 Ill. App. 3d 158 (No. 1), this court held that the trial court's judgment of "guilty" was contrary to the manifest weight of the evidence, and remanded the cause for entry of a judgment of "guilty but mentally ill" and for resentencing based on that judgment. Expressly holding in *Gurga* No. 2 that "the mandate of this court must be followed by the trial court," and that because on remand "[t]he trial court commented at length regarding the remand from this court," and further because "the comments of the trial court [made] it clear that the court failed to comply with the mandate of this court," this court again remanded the cause for another sentencing hearing with "direct[ions] that the hearing be conducted by a different judge." 176 Ill. App. 3d at 83-84.

The trial judge in *Gurga* Nos. 1 and 2 was the Honorable Thomas J. Maloney, and he is the same trial judge in the instant case, in which on remand, as in *Gurga*, he likewise disparagingly commented at length regarding the remand from this court. His comments, hereinafter set forth, also make it clear that he failed to comply with the mandate of this court in the instant case, for which reason this court too, as in *Gurga*, should "direct that the [*Franks* evidentiary] hearing be conducted by a different judge." 176 Ill. App. 3d at 84.

It is clear from the records on the two appeals that the trial judge in the case at bar did not perform and pursue that fair and impartial judicial role that due process demands. The supreme court has repeatedly held that due process requires recusal where hearing and deciding the case "would offer a possible temptation to the average *** judge to *** lead him not to hold the balance nice, clear and true." (*Tumey v. Ohio* (1927), 273 U.S. 510, 532, 71 L. Ed. 749, 758, 47 S. Ct. 437, 444, quoted in *Aetna Life Insurance Co. v. Lavoie* (1986), 475 U.S. 813, 825, 89 L. Ed. 2d 823, 835, 106 S. Ct. 1580, 1587, and *Ward v. Village of Monroeville* (1972), 409 U.S. 57, 60, 34 L. Ed. 2d

267, 271, 93 S. Ct. 80, 83.) Due process demands that a judge recuse himself from hearing a case not only where he is actually prejudiced, but also where his hearing the case would create even the appearance of partiality. The supreme court has held:

> "[The due process clause] 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.' But to perform its high function in the best way *justice must satisfy the appearance of justice.*'" (Emphasis added.) *Aetna Life Insurance Co.*, 475 U.S. at 825, 89 L. Ed. 2d at 835, 106 S. Ct. at 1587, quoting *In re Murchison* (1955), 349 U.S. 133, 136, 99 L. Ed. 942, 946, 75 S. Ct. 623, 625.

The trial judge in the case at bar made no attempt to weigh the scales of justice equally between the contending parties, for which reason justice does not remotely satisfy the appearance of justice in the case at bar. Accordingly, in my judgment, the learned trial judge, the Honorable Thomas J. Maloney, should not further preside in the instant case and the cause should not be remanded for further proceedings before him.

In our initial opinion, we reversed the defendant's syndicated gambling conviction and sentence and remanded the cause "with directions to grant the defendant an evidentiary [*Franks*] hearing to challenge Officer Chambers' affidavit." (*Zymantas*, 147 Ill. App. 3d at 435.) It is clear that our opinion required more than the mere "production of the officer for whatever interrogation might be conducted. It doesn't go beyond that ***," as the trial judge mistakenly ruled. The trial judge concluded that our opinion and mandate simply required that "the officer will be produced and you [defense attorney] will be able to examine him and that will be it." This conclusion was patently erroneous, and no rational or logical or reasonable reading of our opinion could possibly lead to such an absurd, restricted interpretation. The learned trial judge did not refer to or cite a single word or phrase in the opinion upon which he predicated such a nonsensical, narrow and limited construction. The trial judge's restrained interpretation of the opinion was illogical, arbitrary and capricious.

The defendant's motion to quash the search warrant and to produce the informant, and the defendant's supporting affidavit, averred 10 assertions of false statements knowingly or intentionally made, or made with a reckless disregard for the truth, in Officer Chambers' complaint for the search warrant, namely:

> "The undisclosed informer does not, in fact, exist.
> (3) That on his sworn Complaint for Search Warrant, Officer

Chambers made the following false statements knowingly and intentionally, or with reckless disregard for the truth:

(a) That an undisclosed informant was used in this investigation;

(b) That on 14 April 82, Officer Chambers observed this fictitious informer dial the telephone number 274-4967;

(c) That Officer Chambers heard the fictitious telephone conversation;

(d) That Officer Chambers heard the fictitious informer give a code number and that a male voice on the telephone said 'go ahead';

(e) That Officer Chambers saw and heard the fictitious informer place a bet on the Bulls;

(f) That Officer Chambers was with the fictitious informer on the 15th of April where the same aforementioned procedure was used and the informer placed a bet on Detroit;

(g) That Officer Chambers checked with Illinois Bell Telephone and then determined that the telephone was listed to August Zymantas;

(h) That Officer Chambers was informed by the fictitious [informer] that he had been placing basketball wagers with a male known as Augie via Illinois Bell Telephone number 274-4967;

(i) That the fictitious informer had given information to Officer Chambers."

During the original trial court proceedings, the defendant in vain repeatedly requested a *Franks* evidentiary hearing on these assertions. His requests were repeatedly denied by the trial judge, for which reason we reversed the defendant's conviction and remanded for a *Franks* evidentiary hearing. It would appear to be ludicrous for the learned trial judge to construe our opinion as restricting such an evidentiary hearing on the defendant's aforesaid assertions to only the defendant's examination of Officer Chambers, whose very integrity, veracity and conduct the defendant was challenging. Initially, the prosecutor did not so limitedly interpret our opinion and remand, for when the cause first came before the trial judge after remand, for the *Franks* evidentiary hearing, the prosecutor stated:

"The People are ready to proceed today. I have the officer here and *somebody from Illinois Bell coming in this afternoon.*" (Emphasis added.)

The Illinois Bell Telephone records revealed that telephone number 274-4967 was not registered to the defendant Augusta Zymantas,

contrary to Officer Chambers' affidavit that he "checked with Illinois Bell Telephone Security, and found that Illinois Bell Telephone No. 274-4967 is register[ed] to August Zymantas." Presumably, the prosecutor had *"somebody from Illinois Bell coming in this afternoon"* to testify on this disputed issue at the *Franks* evidentiary hearing.

The defendant moved for the prosecutor to produce the informant for defense counsel's examination at the *Franks* evidentiary hearing. The following colloquy occurred:

"THE COURT: *** [T]his Appellate Court decision has nothing to do with an informant.

MR. SCHULTZ [Defense Counsel]: However, Your Honor, the Appellate Court decision was a remand for a hearing on the Motion and the motion in it's [*sic*] entirety and that includes the points I have recited in my motion and among those some eight or nine allegations is the allegation that there is no informant in this case.

Any kind of a meaningful hearing to comport with due process and comply with Sixth Amendment rights to confront and cross, I believe, requires that the informant be made available to cross examine.

*If there is only the officer's integrity who is being questioned to testify there was or was not an informant it is hardly a meaningful hearing.*
* * *

As this is a Motion to Suppress, I think the issue is quite clear that the situation before the Court would obligate the State to produce that informant.

THE COURT: *** [In] every courtroom in this building there are petitions of this kind filed where the Defendant-Petitioner says there was no informant and it is this view when a Petitioner/Defendant says that, the informant should be produced, is that right?

MR. SCHULTZ: That's correct. When that allegation is made, that the informant does not exist. But what distinguishes this situation is *** in this case, there is one established falsehood by the officer in this affidavit. Namely, the fact that he took a telephone number and he contacted Illinois Bell Security and obtained information from them. There has already been a showing that that is a falsehood.

THE COURT: Let me tell you something. *I discussed this case with twelve or thirteen judges of the trial courts. Every one of them considers it to be an absurdity, as I consider it to*

*be an absurdity.*

The phone number is registered to Zymantas. The correct number, the correct address and the correct name, and as I pointed out in deciding the case *it was immaterial whether a person subscribed to a telephone number through himself or his wife.* He was conceding it was his address, it was his telephone number and Judge Pincham went on for pages and pages about the Bill of Rights, the Constitution and the Magna Carta and God knows what else, because the Defendant had a telephone number in his wife's name and *every Judge thought it was an absurdity.*

MR. SCHULTZ: There are several Maloneys in the phone book. I hope this Court or any court—.

THE COURT: *** *[I] do not wish to argue the merits of the decision. I have told you my opinion of it* and the opinion of the courts on this motion.

You see there is a very serious gravity, serious reason recognized in the law to protect informants. They are people who need it and it cannot be overridden by bland off-hand assertion in these petitions that there was no informant." (Emphasis added.)

First, the learned trial judge's ostrichism was clearly unwarranted. Even after our opinion specifically spelled it out, the trial judge refused to accept, or ostensibly did not understand, that the issue on the *Franks* evidentiary hearing was whether Officer Chambers told a lie when he swore that he had checked with Illinois Bell Telephone Security and found that telephone number 274-4967 was registered to the defendant Augusta Zymantas, based upon the official Illinois Bell Telephone receipts for that telephone number, produced by the defendant, which established that the telephone number was not registered in the defendant's name.

Second, the *Franks* evidentiary hearing issue, or the factual veracity of the complaint for the search warrant issue, was not "whether a person subscribed to a telephone number through himself or his wife," as the trial judge, both before and after our opinion, repeatedly mistakenly insisted. Again, the issue was the veracity of the officer's sworn assertion that he learned that the telephone number was registered in the name of the defendant Augusta Zymantas.

Third, regardless to whether, or the extent to which the trial judge and 12 or 13 of his colleagues considered this court's decision an absurdity, the trial judge was constitutionally bound to uphold it, to follow it and to be fair in so doing. He did neither! In spite of his as-

sessment that this court's decision was absurd, the learned trial judge was constitutionally prohibited from distorting or convoluting it. He did both.

Fourth, it was no "bland off-hand assertion that there was no informant" in the case at bar; and fifth, there was no valid basis for concealing the informer's identity, and nondisclosure of the informer's identity was clearly overridden by the facts, circumstances and issues in the case at bar.

Officer Chambers swore that the informant told him on April 14, 1982, that he had placed basketball bets with *Augie* over telephone number 274-4967, and that over that telephone number on April 14, 1982, he overheard the informant give "a code number" and place bets of "$200.00 on the Bulls and $100.00 on the over," and on April 15, 1982, following the same procedure, he overheard the informant bet "$200.00 on Detroit."

Certainly Augie would have to know the identity of the informant who placed the bets with him in order for Augie to collect from the informant if the informant lost the bets, and in order for Augie to pay the informant if the informant won. So, unlike in narcotics cases when narcotics dealers promiscuously sell drugs to numerous unknown and known buyers, and the informant-purchaser is therefore not necessarily known by the seller, a gambling bookie must know the identity of persons from whom he telephonically accepted bets in order to collect and pay. Thus there was no overriding purpose of nondisclosure or nonproduction of the informant in the case at bar, if in fact there was an informant. The defendant knew or could readily determine the identity of the informant, if in fact there was an informant, and if the defendant in fact accepted the wagers from him.

After and inasmuch as the trial judge denied the defense attorney's request for production of the informant, the defense attorney then and therefore asked: "Your Honor, may I inquire what would be the hearing that has been ordered to be conducted ***?" The trial judge responded:

> "Don't ask me. You're the defense. *You want the hearing and the appellate court seems to think you should have it so you are going to have it.*" (Emphasis added.)

Although the prosecutor subsequently shared the trial judge's interpretation that our opinion and mandate did not require him to produce the informant, nevertheless, the prosecutor did not at any time voice any objection to doing so. But the prosecutor did not have to, if any objections he had. The trial judge *sua sponte* expounded the objections for him.

The same trial court, *sua sponte* objections occurred on the defense attorney's motion for discovery. At no time did the prosecutor object to the defendant's discovery motion. Again, it was unnecessary for the prosecutor to do so. The trial judge did the objecting. Anew, the trial judge *sua sponte* staunchly articulated the objections. The defense attorney's presentation of his discovery motion, the complete colloquy and the trial court's ruling thereon follow:

"MR. SCHULTZ: Well, Your Honor, among the issues that were raised in the Defendant's Motion is the issue of the officer's conduct with respect to obtaining the information concerning the Defendant's identity and he has alleged under oath that he contacted Illinois Bell Security.

My investigation, which of course is not in evidence, casts considerable doubt on what the officer did or did not do. In order for me to properly complete my investigation and question the officer under oath I am asking that the State be ordered to produce, in their capacity as facilitator of transmissions of information from the police department to the defense, I am asking them to produce the letter which I was informed by Illinois Bell Security must be filed on each occasion when an unpublished number is sought. I think, published or unpublished numbers, so I am requesting that be produced because *I question whether that exists at all, because I question whether the officer made any contact with Illinois Bell Security.*

I have also asked in there, matters that are allowed me, to test that assertion by police officers. Namely, the letter itself, each person he spoke to at Illinois Bell Security and I would also like to have the name and address of those individuals so that I can subpoena them into court. Interview them and subpoena them into court to testify in this hearing and I would also ask, in order to aid my investigation, copies of any general order of special regulation by the police department which governs obtaining information about unpublished telephone numbers, all of which are highly relevant to the material issue of the officer's conduct and whether his conduct was—his affirmations are merely false or legally false, both of which are standards the Court will have to be ruling on.

THE COURT: *I am afraid all your motion appears to do, to the Court, is a flight of fancy and I see no basis at all for such authorization. You are engaged in a flight of fancy. A thrashing about desperately trying to find something on the belief there must be something wrong here.*

\* \* \*

\*\*\* [I] see no authorization for this delving into the telephone company's methods and the police department's method. Authorization, at most, is an examination of the affiant and that's what this hearing to [*sic*] going to be. *I am not going to bring in the police department or the telephone company.*

You see, in the first place, as I pointed out not too long ago, *they sent it to the Appellate Court and they didn't grasp it.*

\* \* \*

And a Judge in the Appellate Court here said in one of those comments, what the Court calls hearsay warrants, in other words, they never heard the term because most of them have never been in court or as a lawyer \*\*\*. The informant always should be produced and even if courts have to operate around the clock and informants have to be brought in great secrecy, that's what ought to be done and this only opens up, as they call it, a can of worms. Pandora's box. Unending trouble \*\*\*. That's no good and so it's like a merry-go-round and you never know where to stop. *It was a bad idea in the first place and it came from the Appellate Division of the Court* and the problem then, now and will always be until it is resolved, is that people who are in the Appellate Division should proceed from the Trial Division and the Trial Division should proceed or should be established only from courtroom lawyers.

\* \* \*

\*\*\* [T]he criteria which should be established before one should even be considered for the bench, which in the Court's view, as I have stated a thousand times, should be a man of fifteen years day in and day out with courtroom experience, and then can minimally be considered and then after a term or so one might proceed to the Appellate Division and then there might be some sense out of all of this \*\*\*.

\* \* \*

\*\*\* [T]hese young judges, people who got to be judges when they are twenty-eight or thirty and some of them are, and so the younger people who have no problems sleeping and there would be no problem having a judge here all night. Two shifts in a county of seven million people. No problem at all and it wouldn't require extraordinary security. It would be simple security to bring these informants to the courtroom or chambers, day or night, and all these problems and all of this time *and all of these decisions could be junked, as they all should be.* \*\*\*

[B]ut we have to confine ourselves to the limitation of these decisions, so *your second motion [for discovery] is denied.*" (Emphasis added.)

Regarding the trial judge's preceding diatribe, the defense attorney's discovery motion was legally and factually well founded and the expressed grounds therefor were accurately articulated. The motion was not "a flight of fancy" or "a thrashing about desperately trying to find something," as the trial judge baselessly concluded. I additionally note that the trial judge's foregoing personal denigrating assessments of the justices and the decisions of the appellate court, and his preferred method of selecting and electing the judiciary, were invalid considerations in determining and in denying the defense attorney's discovery motion.

Having been admonished by the trial judge that "[a]ll that this opinion *** of the Appellate Court requires is the production of the officer for whatever interrogation might be conducted," and that "the officer will be produced and you will be able to examine him and that will be it," and the trial judge having denied defense counsel's discovery motion regarding the telephone documents, and defense counsel's motion for production of the informant, when the defendant's motion for an evidentiary hearing to challenge Officer Chambers' affidavit, the *Franks* hearing came on to be heard, the defense attorney apprised the trial judge:

"This matter is set for a hearing on our motion to quash and suppress evidence in accordance with the *Franks* decision. And in view of the court's ruling on our motion to disclose informant and our motion for discovery *** we are ready for a hearing on our motion this morning."

Thereupon, the defense attorney was put to the dubious task of calling Officer Chambers as a witness and establishing by an exclusive examination of him that he lied when he stated in his affidavit that he checked with the telephone company and found that telephone number 274-4967 was registered in Augusta Zymantas' name.

Unsurprisingly, Officer Chambers testified that he did not remember the name of the person with whom he spoke at Illinois Bell Security; that he did not submit a letter or any other document to Illinois Bell Telephone requesting information about an unpublished telephone number or the identity of the person to whom that phone number was registered, or that telephone location was obtained by him from Illinois Bell Security on April 15; the number was a nonpublished number which Illinois Bell Security told him was registered to Augusta Zymantas, that he did not receive any written confirmation of this in-

formation from Illinois Bell Security; Illinois Bell Security did not tell him that that telephone number was registered to Nancy Zymantas.

Having been manacled in an evidentiary straightjacket by the trial judge's aforesaid erroneous, restricted interpretation of our opinion and discovery rulings, the defense attorney endeavored to extricate the evidence from such a binding stranglehold by calling the defendant Augusta Zymantas as a witness on the hearing. Zymantas testified that he was not the subscriber to telephone number 274-4967, and that there was no telephone registered or subscribed to in his name. The defendant identified a February and an April 1982 Illinois Bell Telephone bill to Nancy Zymantas, to which the prosecutor objected, stating, "Objection, Your Honor, I don't believe—this is a hearsay document this person is testifying to. He's not the proper party to be testifying." Whatever merit the prosecutor's objection may have had, it became unnecessary for him to further expound on it because, here again, the trial judge became an advocate for the prosecution and zealously pursued the objection for him. The best description of the trial judge's advocacy role is the actual colloquy, exclusively between the trial judge and defense counsel, consisting of no less than seven record pages, immediately following the prosecutor's objection, and which is completely set forth hereafter in appendix No. 1.

Thus, after this extensive dialogue between the trial judge and the defense attorney on the prosecutor's objection, after the defense attorney's request for a continuance to bring in the Illinois Bell Telephone Company's keeper of records to properly prove up the phone company bills, and after the prosecutor's belated admission that the two telephone bills were valid and authentic, the trial judge then admitted, examined and took note that they were Illinois Bell Telephone bills dated February 22, 1982, and April 22, 1982, for telephone number 274-4967, in the name of Nancy Zymantas at 6157½ North Leavitt Street, Chicago, Illinois.

Defendant Augusta Zymantas thereafter additionally testified that on April 14 or 15, 1982, he did not accept any wagers on any basketball game, or any other wager, over any telephone at his residence at 6157½ North Leavitt, and that on those dates from 7 a.m. to 3:30 p.m., he was not at home, but rather, he was at work on his job at S & C Electric at 6601 North Ridge. Zymantas identified defendant's exhibit No. 2 as a document from and signed by S & C Electric personnel administrator, James A. Jones, Jr., which stated that the defendant worked on April 14 and 15, 1982, from 7 a.m. to 3:30 p.m. The trial judge admitted the document as an offer of proof. (Pursuant to the defense attorney's request, the trial judge took note that the

search warrant reflected that it was endorsed and issued on April 15, 1982, at 3:45 p.m.)

Defendant Zymantas further testified that telephone number 274-4967 was a nonpublished telephone number, registered in his wife's name, Nancy Zymantas, at their 6157½ North Leavitt residence.

The prosecutor did not call a single witness. At the conclusion of defendant Zymantas' testimony, defense counsel moved and stated to the trial judge:

"[A]t this time on the basis of the United States Supreme Court decision in McCray versus the State of Illinois I ask that this court now order that the State produce the informant about which there has been testimony. *** The evidence of the defendant which shows that he did not receive a bet and, therefore, did not receive any phone calls from any informant on that day has not been impeached in any way. *There has been a clear and convincing showing that there was no informant*, that the things that were purportedly done by the informant on that day were not done, and on that basis I believe that the defendant has satisfied his burden as set forth in McCray versus Illinois to overcome the government's privilege to maintain the confidentiality of that informant, and I would ask that the court order that that informant be so produced." (Emphasis added.)

The prosecutor initially (1) inaptly responded, then immediately thereafter he (2) aptly responded, following which he finally (3) inaptly responded, as follows:

"Your Honor, in response, [1.] *it doesn't matter where the defendant was on April 14th or 15th* [2.] *What's in question here is the veracity of the police officer when he made out the warrant.*

Nowhere in this warrant does the police officer say that he spoke to Mr. Zymantas when they called. The police officer indicates they called a phone number, a male voice stated—after giving a code number a male voice stated go ahead, then bets were placed.

Based on this information, the officer knowing that the informant gave him the name Augie, the officer checked the listing on the telephone number and it was listed, and he testified, listed to August Zymantas at 6157½ North Leavitt.

■ *This was more than ample probable cause to believe that there was engaging in bets going on at that location and by August Zymantas.* Nowhere in this warrant does it say they spoke

to August Zymantas, so that doesn't matter." (Emphasis added.)

The defense attorney correctly retorted:

*"The issue before this court is not the issue of whether the warrant as filed states probable cause. The issue before this court is whether the facts that were alleged in the complaint were—those facts which are false were included either intentionally or with reckless disregard.*

I submit there has been no evidence to impeach the evidence presented both by document and by live testimony of the defendant that those matters were included recklessly or with an intent to misrepresent." (Emphasis added.)

The prosecutor only peripherally addressed the falsehood-intentional-reckless disregard for the truth issue, and the trial judge failed to properly resolve it.

It is indeed noteworthy that at this late stage in the proceedings there occurred a significant prosecutorial transition, which was immediately advocated and adopted by the trial judge. Apparently, because the defendant had convincingly established that he was not home, but rather was at his place of employment at S & C Electric Company when the wagers were allegedly received over his home telephone, corroborated by his employer's work records, the prosecutor hastily retreated from his original position. He now conversely urged, for the very first time, in response to the defense attorney, that "[n]owhere in this warrant does it say they [Officer Chambers and the informant] spoke to August Zymantas." The trial judge promptly pursued and adopted this unpredicted and unpredictable prosecutorial transformation:

"MR. SCHULTZ [Defense Attorney]: *** [At] this point the only evidence before this court is that Mr. Zymantas was not present at a time when he is purported to have received bets—.

THE COURT: No, it isn't. *He's not purported to have received bets. The person who answered to the name of Augie, a male, is purported to have received bets. *** He was at work. *** As far as he knows. He wasn't there.*

\* \* \*

MR. SCHULTZ: [Mr.] Zymantas testified this afternoon, unrebutted, that he was not at home to take the telephone call.

THE COURT: Nobody said that he was.

MR. SCHULTZ: *** [T]he officer's affidavit states that a male who identified himself as Augie.

MR. GROARK [assistant State's Attorney]: Objection. The

officer's affidavit does not say the phone was answered by a male who identified himself as Augie. That is incorrect.

THE COURT: I don't believe that's correct.

MR. SCHULTZ: Doesn't it say—.

THE COURT: I didn't think that it did.

MR. SCHULTZ: In the first page of the affidavit the affiant states that informant then stated he has been placing basketball wagers with a male known as Augie via this telephone number.

THE COURT: Yes. *It doesn't say that's what happened that day.*" (Emphasis added.)

That the defendant was not at home and was not the person to whom Officer Chambers telephonically talked and with whom the informant telephonically placed the wagers on April 14 and 15, accepted by the trial judge at the conclusion of the evidence on the *Franks* hearing in upholding the validity of the warrant, is the diametrically opposite position taken by the trial judge when he initially denied the defendant a *Franks* hearing and upheld the warrant's validity. In the original trial court proceedings, and we noted in our previous opinion, *People v. Zymantas* (1986), 147 Ill. App. 3d 420, 422, the defense attorney argued that the complaint for the search warrant and the search warrant itself did not particularly describe the person to be searched, and that the "Augie" referred to in the complaint for the search warrant was not otherwise identified. The same trial judge then responded:

"THE COURT: But it was rationale to assume that *the Augie who spoke on the telephone is the August Zymantas to whom the telephone is registered.*

MR. CARROLL [Defense Attorney]: So *the court would rely in fact that the phone is registered—.*

THE COURT: *To August Zymantas, who is called by the caller, 'Augie.'* " (Emphasis added.)

These shifting, inconsistent positions by the trial judge in upholding the validity of the warrant, before and after the *Franks* hearing, are totally unfair and unacceptable.

At the conclusion of the evidence, there was also extensive colloquy, exclusively between the defense attorney and the trial judge, on the tactical and evidentiary curtailment of the defense attorney by the trial judge's adverse discovery rulings, which are hereafter set forth in appendix No. 2.

If there remained any doubt of the deficiency and the incompleteness of the *Franks* hearing, such doubt is steadfastly resolved by the

following colloquy, in which the trial judge illegally, improperly and illogically engaged in and resorted to distorted, convoluted, unwarranted and evidentially baseless inferences, innuendos, assumptions and suppositions, contrary to the undisputed and uncontradicted evidence before him, in order to uphold the warrant's validity:

"MR. SCHULTZ [Defense Attorney]: There has been no evidence to overcome the unrefuted, unrebutted evidence that the officer was unable to obtain from Illinois Bell that the phone was registered to August Zymantas. The only proof that's been adduced was that the phone was not registered to August Zymantas. That, I submit, is therefore a false information included in the affidavit—.

THE COURT: No. No. That isn't proof at all. *I assume when the officer got that information from Illinois Bell Security that whoever he spoke to there looked at some record.* The defendant's wife does not work, as he testified.

Ordinarily telephones are not—*people who are unemployed are not permitted, are not granted the use of telephones, so we may properly infer that his name, he, the employed person in the household, appeared someplace on the consulted records and that very possibly whoever gave the officer that information gave him that name, maybe in error.* \*\*\* The officer said that's the name that he was given.

\* \* \*

*I mean it's just common sense that a telephone subscriber would be an employed person. It's common practice, very common, that males, for some reason or other, different reasons, many different reasons, have their telephone listed in their wives' names, sometimes their mother's name.* It's a common practice for a variety of reasons, but the telephone subscriber is ordinarily an employed person.

*So very likely the defendant's name appeared someplace on this subscription application, the information sheet, which we assume the security people at Bell referred to and so it's conceivable that they gave the wrong name.*

MR. SCHULTZ: \*\*\* [I] think that is an impermissible inference from the evidence that's before the court, your Honor. \*\*\*

THE COURT: But we have a fact here in contradiction. The officer said he was given one name. Your billing sheet show[s] another name. We don't have the entire conversation between the officer and the person that he spoke to five years ago. He doesn't remember the whole conversation. There might

have been some short conversation there." (*Emphasis* added.)

From the trial court's foregoing rationale and rulings, it is glaringly apparent that the trial judge was determined to reach his desired result in spite of and regardless of the evidence, or the restrictions he imposed on the evidence to be presented. Here, again, if there remained any doubt about these premises, such doubt is completely vanished by the trial judge's following conclusions, findings and comments:

> "THE COURT: *** [S]o on this hearing *the court concludes that nothing alleged in the defendant's motion has been established by the evidence.* And the affiant, the defendant, having been granted a Franks motion and *the evidence adduced during this hearing has produced no other fact or circumstance that would cause the court to alter its ruling, its prior ruling, in any way and that ruling is reaffirmed. And that ruling refers to the defendant's original motion to quash a search warrant and suppress evidence which was denied, and it is again denied.*" (*Emphasis* added.)

The trial judge was certainly aware of and clearly recognized the issue that was presented to him and which was to be decided by him. During the colloquy following the presentation of the evidence, the trial judge correctly articulated the issue:

> "The issue here is the veracity of the police officer-affiant in making this affidavit that was made in support of this complaint for a search warrant. That's the issue, his veracity. That is what has been tested on this hearing."

Nevertheless, the trial judge capriciously and unlawfully restricted and excluded the presentation of extremely pertinent evidence on this issue. Moreover, pertinent evidence that was presented to him was either ignored by him or was discredited by him by resorting to illegal or unwarranted inference and baseless assumptions.

The defendant in the case at bar, who, for all that appears, has taken no oath to comply with, abide by or uphold the laws or the constitution of this land was charged with gambling, an enterprise in which the State and millions of citizens daily legally engage. The issue on his motion to quash the search warrant and suppress evidence was indeed a simple, but perhaps an unpleasant one. It involved and challenged the veracity and integrity of a law enforcement officer. Tragically, the issue in the case was needlessly escalated to the integrity of the judiciary by the trial judge, who has clearly manifested, in my judgment, that he is constitutionally unqualified to further preside over this case. (*Aetna Life Insurance Co. v. Lavoie* (1986), 475 U.S.

813, 825, 89 L. Ed. 2d 823, 835, 106 S. Ct. 1580, 1587; *Tumey v. Ohio* (1927), 273 U.S. 510, 532, 71 L. Ed. 749, 758, 47 S. Ct. 437, 444.) From the facts presented below, one would hope that the prosecutor and the trial judge themselves would have, with fervent vigor, sought from the telephone company, the S & C Electric Company records and personnel, the informant and elsewhere to determine the true status of Officer Chambers' veracity. But they did not do so, even though it was certainly their solemn, sworn duty to have done so. Accordingly, this case in my judgment should not be remanded to Judge Maloney for any further proceedings.

### APPENDIX NO. 1

Colloquy exclusively between the trial judge and the defense counsel on the prosecutor's objection to the admission of the Nancy Zymantas' Bell Telephone bills into evidence.

"MR. SCHULTZ [Defense Attorney]: It's [Nancy Zymantas Bell Telephone bills] in evidence, part of the record.

THE COURT: Not in this hearing.

\* \* \*

MR. SCHULTZ: It was made a part of that motion, your Honor. I'm simply asking that the witness be allowed to testify from documents which are—[ ]

\* \* \*

part of the petition, the document itself that was filed and made a part of the court record and about which there were hearings \* \* \* and about which the court referred to in a prior proceeding, to which this morning's hearing—proceeding relates to. \* \* \*

\* \* \*

\* \* \* [I]n the course of the proceedings in this case in 1983 or in 1984 this particular petition, this motion that I've handed to Mr. Zymantas was presented and received by this court and the contents of it considered by this court, including the Xerox copy of the phone bill for the telephone number which is in question this morning.

THE COURT: Who testified in connection with it?

MR. SCHULTZ: I wasn't here, your Honor.

THE COURT: Wait. Wait. You needn't keep repeating that you weren't here because you are here now and we assume that you know the answers to all the issues that you raise. You are raising the issue so we assume that you know from the record that you have dealt with. The fact that a document was re-

ferred to in the motion doesn't put it in evidence.

MR. SCHULTZ: It is a part of that motion, your Honor, the same as the pleadings, your Honor. If I were to ask Mr. Zymantas to refer to and testify from the indictment in this cause—.

THE COURT: He couldn't do it.

MR. SCHULTZ: In another courtroom, your Honor, I received a different ruling. Obviously, this court's ruling controls.

THE COURT: Testify from an indictment that he didn't prepare?

MR. SCHULTZ: Correct.

THE COURT: Supposing there was a mistake in the indictment that someone had prepared, would he go ahead and testify to that as though it was some verified fact?

MR. SCHULTZ: That was precisely the situation in the other case, your Honor.

THE COURT: I can imagine that it was. It would not be anything unusual in the kind of returns that we get from the grand jury division here, but I don't understand though what new rule of evidence you're talking about, how something gets into evidence because it is pled it is automatically in evidence? This is something new.

MR. SCHULTZ: I believe that there are things that are before the court and which the court as fact-finder may be requested to take notice of and consider other than those things which are specifically placed into evidence through testimony, and I submit—.

THE COURT: There's a photostat of some kind of a utility bill as a page in this pleading. Certainly there's no entry into evidence by virtue of such an addition. It is, as you say, it is an attachment here following the affidavit So—.

MR. SCHULTZ: Your Honor, I—.

THE COURT: I don't see any necessity of referring to it. The witness here is testifying from his personal knowledge of events, so I don't see any necessity to refer to this.

*He's already testified he was not the subscriber. That's his testimony under oath.* He may also testify probably as to who the subscriber was, without any reference to this or verification or authentication.

MR. SCHULTZ: My purpose in seeking to elicit that testimony, your Honor, is because I think the court will properly weigh the testimony of this witness based on issues of credibility, and the document that I seek to have the witness testify

from has an indicia of credibility that I think is greater than that, may well be greater than that, and that would be the purpose of offering it. Your Honor, I am taken by surprise—.

THE COURT: You can't do it by referring to a page in your pleading and which contains a Xerox copy of some invoice.

MR. SCHULTZ: Your Honor, I'm taken by surprise.

THE COURT: I don't know why.

MR. SCHULTZ: I'm taken by surprise because *this court in the trial record frequently referred to the facts to its knowledge of the telephone number in question being registered to Nancy Zymantas. The Appellate Court record is replete with those same references, your Honor, and it is part of the pleadings.*

THE COURT: I hope you're not asking me to remember what I said during the course of this hearing in—What year was it?

MR. SCHULTZ: 1983. I don't know. '84.

THE COURT: We've had a few hearings since then. I don't recall everything that I said in all of the hearings and all of the trials. I do recall that I had a great deal to say in most hearings and trials.

MR. SCHULTZ: If the court does not recall the specific document and the court will not permit the witness to testify, not withstanding my argument, then I would respectfully—I believe—.

THE COURT: He can testify that was the telephone number at his residence, I mean if he chooses to, and that the subscriber was his wife.

MR. SCHULTZ: *It's my purpose to have him testify from a document which I think has particularly strong indicia of credibility as a business record or as a telephone bill does have.* If the court will not permit that then I'm taken by surprise and I would respectfully request a continuance to permit me to bring in the caretaker of the record at Illinois Bell. I think it's a routine matter. I have the original copy.

THE COURT: Is his wife available? She could testify, couldn't she?

MR. SCHULTZ: His wife is not available. I think it would be necessary to obtain the caretaker of the records to authenticate this to satisfy the foundation requirement to have this received into evidence as a business record to permit the witness to testify to it and I will obtain that individual—.

THE COURT: Do you have the original there?

MR. SCHULTZ: Yes, I do, your Honor.

THE COURT: Let me see it. This is a February '82 invoice. Oh, there's [*sic*] two, two of them here?

MR. SCHULTZ: Yes.

THE COURT: Okay. I'll put the April on top. You've got February and April, right?

MR. SCHULTZ: That's correct.

THE COURT: Has the State seen the original?

MR. GROARK [assistant State's Attorney]: I've seen the Xeroxes. I'm sure they're identical.

THE COURT: We'll accept this as factual, counsel, even though it's a shortcut.

MR. SCHULTZ: Thank you, your Honor. May I approach the witness?

THE COURT: I've examined it. I will accept it as factual.

MR. SCHULTZ: May I publish it for the record?" (Emphasis added.)

## APPENDIX NO. 2

Colloquy exclusively between defense counsel and the trial judge on the evidence restrictions caused by the trial judge's adverse discovery rulings:

"MR. SCHULTZ [Defense Counsel]: Your Honor, the defense saw fit by its motion for discovery to make available all of those individuals, the identities of all of those individuals as well as all the documentation. The defendant's motion to discover that was denied.

THE COURT: What individuals?

MR. SCHULTZ: Your Honor, in my motion to discover, which is in the court file, I sought the right to know the names of the individuals and thereby ask that the government be ordered to direct their—.

THE COURT: The officer testified that he doesn't remember the name of the person that he spoke to.

MR. SCHULTZ: On the stand, but he says those are the things that he recorded in his notebook. Had the court granted my motion for discovery then the burden would have been on the State as in their role—.

\* \* \*

THE COURT: You didn't say anything about his notebook. Why didn't you ask him for it today?

MR. SCHULTZ: Your Honor, I specifically asked that I be

allowed to discover that in my written motion. It is part of my written motion that was denied on Thursday. That is the reason I posed what the court—.

THE COURT: As I recall in your motion you wanted the telephone company security records and names of personnel.

MR. SCHULTZ: I also specifically requested that information from the police officer. *** My point is, your Honor, with respect to best evidence or evidence that is most probative of the issue, *the court foreclosed my obtaining any other evidence than just the live testimony of the police officer.*

THE COURT: *No, I assumed you would have pursued that day. I didn't think you were relying on any prior rulings.*

MR. SCHULTZ: I asked him if he had his notebook with him and he said he did not.

THE COURT: Then you dropped it. Why didn't you ask him where is it[?] Did you give it to the State? Does the State know where it is?

MR. GROARK [assistant State's Attorney]: No, your Honor.

THE COURT: I expected you to pursue it. I was surprised that you discontinued your questioning. There was [sic] no objections sustained.

MR. SCHULTZ: *Your Honor, on the basis of the ruling on my Motion For Discovery I was foreclosed from getting my hands on it.*

\* \* \*

THE COURT: *** [Y]ou don't mention anything here [in your discovery motion] about a notebook. Maybe you didn't know about a notebook. But when it was mentioned today no ruling—no objection was made. You were entitled to pursue it as far as you wanted to.

MR. SCHULTZ: Your Honor, in this posture the officer indicated that he did not have—.

THE COURT: He didn't have it with him.

MR. SCHULTZ: Therefore I had to be prepared for the hearing today. When I was foreclosed from obtaining discovery—.

THE COURT: Why didn't you ask him where is it or does it still exist?

MR. SCHULTZ: That would not have been material or relevant to any issue or probative of anything—.

THE COURT: Well, then it was a matter of choice.

MR. SCHULTZ: I was barred from having access to it.

THE COURT: No, you weren't. No, you weren't at all. He mentioned, if you asked the question that you wanted to ask. As you say, to you it was not probative of any issue. So as I say, the McCray case has nothing to do with this.

The issue here is the veracity of the police officer-affiant in making this affidavit that was made in support of his complaint for a search warrant. That's the issue, his veracity. That is what has been tested on this hearing.

MR. SCHULTZ: Your Honor, I think that his veracity—when I allege in my motion that he lied, that there was no informant I am, therefore, saying that the officer lied when he stated in his affidavit that he had any transaction with an informant. I sought to require that to be produced—that the informant be produced so that I could test whether there ever was an informant. I have now obtained the only evidence that was available from this police officer and that is that he has a recollection—." (Emphasis added.)