THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK C. ELWORTHY, Defendant-Appellant.

First District (5th Division)   No. 1—88—2133

Opinion filed May 31, 1991.

Terry Sullivan, Ltd., of Rolling Meadows (Nancy J. Nicol, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendant, Mark C. Elworthy, appeals from his convictions for possession of cannabis and possession of cocaine with intent to deliver. (Ill. Rev. Stat. 1987, ch. 56½, pars. 704(d), 1402(a)(2).) We consider: (1) whether the denial of defendant's jury waiver was unconstitutional; (2) whether the denial of defendant's motion to quash the search warrant was against the manifest weight of the evidence; (3) whether the denial of defendant's motion to suppress statements and

evidence was against the manifest weight of the evidence; and (4) whether the exclusion of evidence as a discovery sanction was an abuse of discretion. For the following reasons, we reverse and remand for new trial.

Officer Julius Jones prepared a complaint for a search warrant of defendant's house based on information given to him by a confidential informant he had known for five years. In the affidavit supporting the complaint, Jones stated that in the previous two months, the informant had given him information on two occasions which resulted in the seizure of illegal drugs and the arrest of suspects. Jones stated that on November 23, 1985, the informant told him he had just purchased a quarter of an ounce of cocaine for $500 from defendant in defendant's house. The informant also said defendant still had a large amount of cocaine left in the house.

A judge issued a warrant to search defendant's house for cocaine which was executed on November 25, 1985. The police recovered cocaine, cannabis, and $54,200 in cash. He was arrested and charged with possession of cannabis and possession of cocaine with intent to deliver.

Defendant moved to quash the search warrant, arguing the affidavit supporting the warrant contained false statements and requesting an evidentiary hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. Defendant's motion was supported with his affidavit and that of his wife, Denise Elworthy, and his friend, Wally Naumenko. They each stated that defendant was in Ontario on November 23, 1985, the date the informant claimed he purchased cocaine from defendant.

The trial judge found defendant presented a sufficient basis to grant an evidentiary hearing. At the hearing, Officer Jones testified that when he met with the informant, the informant had used some of the cocaine he purchased from defendant. The informant was "feeling kind of good" but responded intelligently during their conversation. Jones also testified he had received information from the informant approximately 40 times in five years and he had never given false information. On 25 to 30 of those occasions, the information led to the recovery of contraband, for which the informant was paid. On 10 to 13 other occasions, the information did not result in the recovery of contraband but Jones explained the failures were not due to the inaccuracy of the information from the informant. Generally, the failures resulted when the suspects either disposed of the drugs or sold them before the police could recover them.

Denise Elworthy, defendant's wife, testified that on November 22, 1985, defendant drove to Ontario with Naumenko and did not return until November 24, after 1 a.m. She denied that anyone came to the house to purchase cocaine on November 23.

Naumenko testified he was with defendant on the trip to Ontario and after dinner on November 23, defendant drove back home by himself.

Based on Jones' testimony, defendant subpoenaed approximately 43 affidavits for search warrants, spanning a five-year period, prepared by Jones in which he relied on information from the informant involved in this case. When the State resisted the subpoena, the trial judge ordered it to produce only the affidavits relating to the two previous encounters that Jones referred to in his affidavit. The judge inspected the affidavits *in camera* and excised portions which could have led to the identity of the informant. They were then produced to defendant for the hearing and Jones was recalled as a witness.

Jones further testified that in 1985 he prepared approximately 15 affidavits for search warrants relying on information from the informant using a similar format. Jones explained that in the affidavit for defendant's case he cited only the past two months' contact with the informant to show recent reliability.

Defendant also subpoenaed the Chicago police department's file on the confidential informant. From the trial judge's *in camera* review of the file, he stated that the informant began providing information to the department in 1981 and, since that time, had provided information 88 times for which he was often paid. He received a total of $3,400 for previous cases and $1,500 for defendant's case. Based on the file, the judge was satisfied that there was a confidential informant. Although defendant also moved for the disclosure of the informant's identity and production of the informant for the hearing, the judge denied the motion after reviewing the file.

In ruling on defendant's motion to quash, the judge found that although defendant's witnesses were credible and testified that defendant was out of town when the alleged drug sale took place, Jones had no reason to doubt the informant. Based on the testimony at the hearing and the review of the informant's file, the judge denied defendant's motion to quash the search warrant.

Defendant also moved to suppress statements he made while the police were searching the house and the evidence seized as a result of those statements.

At the hearing on the motion to suppress, Sergeant Joseph D'Antonio testified that he and several other police officers executed the

search warrant for defendant's house. After defendant was given the search warrant and read his *Miranda* rights, D'Antonio began searching the kitchen while Officer Jones and Lieutenant William Callaghan were searching the family room in the basement. Within five minutes of when they arrived, defendant made a statement to Jones. D'Antonio, Jones, and Callaghan were present in the family room when defendant made another statement. Jones opened the drawer of a desk and found drugs and money.

Jones testified that when they searched the house, defendant, his sister-in-law, and two children were present. Jones admitted he may have told defendant that his wife and sister-in-law would be arrested and the children would be sent to the Department of Children and Family Services (DCFS) if defendant did not tell them where the drugs were. After Jones had been searching the family room for approximately 30 minutes, defendant made a statement. Jones testified he could not recall whether the desk drawer, where he found the drugs and money, was locked. However, at his deposition, Jones testified that the desk drawer was unlocked, and at the preliminary hearing, he testified that the drawer was locked and defendant gave him the key to open it.

Lieutenant Callaghan testified that after he had been searching the family room for approximately six minutes, defendant entered the room with Jones and D'Antonio. Jones said defendant would show them where the drugs were. When they recovered the drugs, Callaghan continued to search the family room.

Donna Bernhardt, defendant's sister-in-law, testified that when the police executed the search warrant, she was in the house with her child and was baby-sitting defendant's child. After the police had been searching for an hour and 45 minutes, Callaghan told defendant that if he did not tell them where the drugs were, Bernhardt and his wife would be arrested and the children would be taken to the "Audie" home.

Defendant testified that he was working at the desk in the family room when the police arrived. Approximately a half hour after they entered, Callaghan and Jones told defendant that if he did not tell them where the drugs were, Bernhardt and his wife would be arrested and the children would be taken to the "Audie" home. A half hour later, Callaghan and Jones repeated the threat. Defendant then made statements to Jones because he was afraid for his wife and children.

In ruling on the motion to suppress, the judge found that Jones coerced defendant to make the statements by threatening to arrest

his wife and sister-in-law and take the children to DCFS. As a result, the judge suppressed defendant's statements pertaining to where the drugs were located. However, the judge found that the drugs were admissible because the police would have found them without defendant's statements. Therefore, the statements were suppressed but the drugs were admissible at trial.

Prior to trial, defendant signed a jury waiver form; however, the judge granted the State's request for a jury trial under section 115—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—1).

At trial, Officer Jones testified that pursuant to a search warrant for defendant's house, he recovered three bags containing a crushed green plant, one bag containing a white rock-like substance, and $54,000 in cash from a desk in the family room. Sergeant D'Antonio and Lieutenant Callaghan testified they were present when Jones found the items.

Arlene Koszyk, a criminalist from the Chicago police department crime laboratory, testified that the bags removed from defendant's house contained 942 grams of cocaine and 31.14 grams of cannabis. The State rested its case against defendant.

Defendant's wife, Denise Elworthy, testified that the desk in the family room where the drugs were found was owned by their landlord, Arthur Canpos. Canpos had keys to the house and, on occasion, he entered the house. She also testified that at the time of trial, Canpos was in prison for selling cocaine but the judge sustained the State's objection to that testimony and instructed the jury to disregard it.

Defendant moved to admit a document purporting to establish Canpos' conviction but the court excluded the document because defendant did not tender it to the State prior to trial, in violation of discovery rules. Defendant rested his case.

The jury found defendant guilty of possession of cannabis and possession of cocaine with intent to deliver. He was sentenced to concurrent terms of nine and two years' imprisonment, fined $50,000, and he now appeals.

OPINION

I

The most significant argument defendant raises on appeal is that his constitutional rights were violated when the trial judge denied his

jury waiver and granted the State's request for a jury trial. The State concedes error on this issue.

Section 115—1, in effect at the time of defendant's trial, provided that for certain offenses, including those involved in this case, a defendant would be tried by a jury unless both the State and the defendant waived a jury trial. (Ill. Rev. Stat. 1987, ch. 38, par. 115—1.) Relying on this authority, the judge granted the State's request for a jury trial despite defendant's waiver.

■ While defendant's case was pending on appeal, the Illinois Supreme Court held that section 115—1 violated the Illinois Constitution because it limited defendant's right to waive a jury trial. (*People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209, 533 N.E.2d 873.) Subsequently, the supreme court held that its decision in *Joyce* should be applied retroactively. (*People v. Gersch* (1990), 135 Ill. 2d 384, 553 N.E.2d 281.) The remedy for the denial of the right to waive a jury trial is to reverse the conviction and remand for a new trial. (*Gersch*, 135 Ill. 2d 384, 553 N.E.2d 281.) As a result, defendant's convictions are reversed and remanded for a new trial.

Although defendant must be retried, both parties request this court to consider the remaining issues defendant raises on appeal.

## II

One of the remaining issues is defendant's challenge to the denial of his motion to quash the search warrant brought under *Franks* (438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674). On appeal, he argues that the *Franks* hearing was unfair because the trial judge did not enforce his subpoena for documents and denied his motion to produce the confidential informant. Additionally, he contends the denial of the motion to quash was against the manifest weight of the evidence.

In *Franks*, the United States Supreme Court recognized that although an affidavit supporting a search warrant is presumed valid, a defendant has a limited right to challenge the veracity of the affidavit. (*Franks*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674; accord *People v. Lucente* (1987), 116 Ill. 2d 133, 506 N.E.2d 1269.) The search warrant should be quashed if, after a hearing, a defendant proves that the affiant made false statements in the affidavit, either intentionally or with reckless disregard for the truth, and the false statements were necessary to establish probable cause. *Franks*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.

Initially, defendant argues that he was denied a fair *Franks* hearing because the trial judge did not enforce his subpoena for documents to its full extent. Based on Officer Jones' testimony, defendant

subpoenaed 43 affidavits for search warrants prepared by Jones, spanning a five-year period, in which he relied on the informant involved in this case.

Courts have recognized that without some discovery it may be difficult for a defendant to prove his challenge to the existence or reliability of a confidential informant under *Franks*. (*People v. Torres* (1990), 200 Ill. App. 3d 253, 558 N.E.2d 645; *People v. Rodriguez* (1983), 119 Ill. App. 3d 575, 456 N.E.2d 989.) However, one of the requirements for a subpoena for documents is that the documents are evidentiary and relevant. (*People v. Shukovsky* (1988), 128 Ill. 2d 210, 538 N.E.2d 444.) The decision of the trial judge on whether to grant discovery for a *Franks* hearing will not be disturbed absent an abuse of discretion. *People v. Zymantas* (1989), 191 Ill. App. 3d 55, 547 N.E.2d 536.

■ Defendant claims that enforcing the subpoena to its full extent would have proved that the additional affidavits did not exist and, therefore, would have proved Jones lied in his affidavit. However, in his affidavit Jones referred to two previous successful encounters with the informant and those previous affidavits for search warrants were produced to defendant for the hearing. Defendant's subpoena for the additional affidavits sought to challenge Jones' testimony that he had used the informant approximately 43 times; however, the trial judge found Jones' testimony was credible. Defendant also claims that Jones' affidavit in this case contained "boiler plate" language and if the additional search warrants also had such language, they would have proved that Jones lied. Jones admitted in his testimony that he followed a certain format when he prepared affidavits for search warrants. However, even if the previous affidavits contained "boiler plate" language, they would not establish the untruthfulness of the affidavit in the present case. (*People v. Hodges* (1987), 159 Ill. App. 3d 38, 512 N.E.2d 19.) As a result, the additional affidavits were not relevant to the hearing, and the trial judge's denial of defendant's request for discovery was not an abuse of discretion.

Defendant also argues the *Franks* hearing was unfair because his motion for disclosure of the informant's identity and production of the informant was denied.

Generally, the State is not required to disclose the identity of a confidential informant unless the failure to do so would infringe defendant's constitutional rights. (134 Ill. 2d R. 412(j)(ii).) Neither *Franks* nor *Lucente* considered whether or under what circumstances an informant should be produced to testify for a *Franks* hearing. However, the appellate court has stated that disclosure of an inform-

ant's identity for such a hearing may be required if the trial judge doubts the credibility of the affiant (*People v. Friend* (1988), 177 Ill. App. 3d 1002, 533 N.E.2d 409) or if the informant participated in the crime for which defendant was charged (*Zymantas*, 191 Ill. App. 3d 55, 547 N.E.2d 536). The decision to require disclosure of the informant is within the trial judge's discretion. *Friend*, 177 Ill. App. 3d 1002, 533 N.E.2d 409.

■ In this case, the trial judge found Jones' testimony at the hearing was credible. Jones testified that he believed the informant was reliable and he had never given false information in the past. After a review of the informant's file, the judge was convinced that there was an informant. Additionally, the informant did not participate in the crimes defendant was charged with committing, which were possession and possession with intent to deliver. Although the informant purchased cocaine from defendant, defendant was not charged with that offense. Accordingly, disclosure or production of the informant was not required for the *Franks* hearing and the denial of defendant's motion was not an abuse of discretion.

Defendant's last argument in connection with the *Franks* hearing is that the denial of his motion to quash the search warrant was against the manifest weight of the evidence.

As stated previously, an affidavit supporting a search warrant is presumed valid. (*Franks*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.) To overcome the presumption, a defendant must prove by a preponderance of the evidence that the affiant included false statements in the affidavit, either intentionally or with reckless disregard for the truth, and that without the false statements, there was no probable cause. (*Franks*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.) The decision of a trial judge in ruling on a motion to quash a search warrant will not be disturbed unless it was against the manifest weight of the evidence. *Lucente*, 116 Ill. 2d 133, 506 N.E.2d 1269.

Jones testified that he prepared the affidavit based on the informant's statements that he purchased cocaine from defendant on November 23, 1985. The affidavit stated that in the previous two months, the informant provided information which led to the recovery of contraband. Jones had known the informant for five years and the informant provided information to Jones approximately 40 times which led to the recovery of contraband 25 to 30 times. Jones also testified that the informant never provided false information. On the other hand, defendant's wife testified that defendant was in Canada on the day the informant claimed he purchased cocaine from defend-

ant. Defendant's friend testified he accompanied defendant on the trip. In addition to hearing testimony, the judge reviewed the police department's file on the informant which disclosed that he had provided information to the department approximately 88 times over a five-year period.

■ Defendant contends the evidence established Jones recklessly disregarded the truth in his affidavit because he omitted the 10 to 13 occasions when searches based on the informant's information were not successful. Omissions may invalidate an affidavit for search warrant if the omitted information was material to the determination of probable cause and it was omitted with the intention to mislead the judge issuing the search warrant. (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.) In this case, however, Jones explained that the unsuccessful searches were not due to false information from the informant and he omitted those occasions from the affidavit to show recent examples of the informant's reliability. As a result, the omitted information was not material to the determination of probable cause because it did not diminish the informant's reliability and there was no evidence that Jones omitted the information with the intent to mislead the judge.

Defendant also contends that the "boiler plate" language in the affidavit indicates that Jones recklessly disregarded the truth. As stated previously, whether or not the affidavit contained such language does not address its veracity (*Hodges*, 159 Ill. App. 3d 38, 512 N.E.2d 19) and, therefore, defendant's allegation does not exhibit a reckless disregard for the truth.

Additionally, defendant contends that Jones' failure to corroborate the informant's information established he recklessly disregarded the truth. Defendant relies on *Lucente*, where the court indicated that the failure of an affiant to corroborate information from an informant may tip the balance in favor of granting a *Franks* hearing if defendant showed the informant "blatantly lied" or his information was "substantially false." (*Lucente*, 116 Ill. 2d at 152, 506 N.E.2d at 1277.) Although defendant was granted a *Franks* hearing in this case, he apparently argues Jones' failure to corroborate indicated he recklessly disregarded the truth and should be considered in determining whether the denial of defendant's motion was against the manifest weight of the evidence.

Even accepting defendant's witnesses' testimony as true, the evidence presented at the hearing showed that Jones had no basis to doubt the informant's information. The informant had provided information on numerous occasions which generally resulted in successful

searches. Although on occasion the searches were unsuccessful, they were not the result of false information. Jones' failure to corroborate the information on this occasion was outweighed by the strong evidence of the informant's reliability over a significant period of time. As a result, the judge's decision that Jones did not recklessly disregard the truth was not against the manifest weight of the evidence.

### III

Concerning his motion to suppress evidence, defendant argues the motion should have been granted because the drugs were found as a result of coerced statements he made during the search. The judge denied the motion because the evidence would have been inevitably discovered without the coerced statements.

In *Nix v. Williams* (1984), 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501, the United States Supreme Court adopted an inevitable discovery exception to the exclusionary rule which allows the admission of evidence obtained in violation of the constitution if it would have been inevitably discovered lawfully. The rationale supporting the rule is that the prosecution should not be put in a worse position than it would have been in had the violation not taken place. (*Nix*, 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501.) The Illinois Supreme Court also recognized the inevitable discovery rule in *People v. Hoskins* (1984), 101 Ill. 2d 209, 461 N.E.2d 941, although it did not base its decision on the rule. When faced with a motion to suppress, the State must prove by a preponderance of the evidence that the evidence in question would have been discovered by lawful means. (*People v. Buffo* (1990), 202 Ill. App. 3d 240, 559 N.E.2d 908.) The trial judge's decision on a motion to suppress will not be disturbed unless it was manifestly erroneous. *Hoskins*, 101 Ill. 2d 209, 461 N.E.2d 941.

In *Nix*, the police obtained statements from defendant in violation of the sixth amendment which led them to the body of a child in a ditch. At the time, a large-scale search for the child was being conducted which was suspended when defendant cooperated with the police. The organizer of the search testified that, without defendant's cooperation, the search would have continued into the area where the body was found. Under those circumstances, the court found that the body would have inevitably been found and the evidence was admissible.

In the present case, the police were searching defendant's house for cocaine when he made statements which led to the discovery of the drugs in a desk located in the family room. At the time he made

the statements, Lieutenant Callaghan was searching the family room and he continued his search after the drugs were discovered.

Defendant contends the length of the search indicates that the police would not have recovered the drugs without his statements. However, even if the police were searching the house for as long as an hour and 45 minutes as Bernhardt testified, it was not a significant amount of time. Defendant also contends there was no evidence of a police procedure supporting the conclusion that the drugs would have been found without his statements. However, it is significant that when defendant made the statements, Callaghan was searching the room where the drugs were found and continued to search afterward. Also, the drugs were found in a place where it was reasonably expected such items would be found. Under the circumstances presented in this case, the trial judge's finding that the drugs would have been inevitably discovered was not manifestly erroneous.

## IV

Lastly, defendant argues the trial judge improperly refused to admit evidence that Canpos, his landlord, was in prison for selling cocaine. The trial judge excluded the evidence because defendant did not disclose the evidence to the State, which violated discovery rules.

A trial judge may exclude evidence as a discovery sanction when a party failed to disclose the evidence to the other side. (134 Ill. 2d R. 415(g)(i).) Exclusion of evidence is proper when the party wilfully violated discovery "to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence." (*Taylor v. Illinois* (1988), 484 U.S. 400, 415, 98 L. Ed. 2d 798, 814, 108 S. Ct. 646, 655.) The trial judge's imposition of a discovery sanction should not be reversed on appeal unless it was an abuse of discretion. *People v. Tinoco* (1989), 185 Ill. App. 3d 816, 541 N.E.2d 1198.

Defendant did not disclose the evidence until after the State rested its case and defendant's wife was testifying in his case in chief. He subsequently moved to admit a document purporting to establish the conviction. On appeal, defendant does not address the exclusion of the evidence as a discovery sanction but only argues the evidence was admissible to prove another person committed the crime, citing *People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696. Defendant's actions of waiting until the witness was on the stand testifying in front of the jury before disclosing the evidence could properly be viewed as a wilful violation of discovery to obtain a tactical advantage. As a result, the judge did not abuse his discretion in excluding the evidence.

## V

In conclusion, we find defendant's convictions must be reversed and remanded for new trial because he was denied the right to waive a jury trial. However, the denials of his motions to quash and suppress evidence were not against the manifest weight of the evidence and will not be disturbed on appeal. Also, the judge did not abuse his discretion when he refused to admit evidence which defendant did not disclose to the State.

Reversed and remanded for new trial.

GORDON and McNULTY, JJ., concur.