THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM ADAMS, Defendant-Appellant.

First District (6th Division) No. 1—92—3157

Opinion filed December 3, 1993.—Rehearing denied May 3, 1994.

Irving Miller, of Ryan, Miller & Trafelet, P.C., of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Katherine S.W. Schweit, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Following a bench trial, defendant, William Adams, was found guilty of possession of a controlled substance. He was sentenced to

two years' probation, ordered to complete 150 hours of community service and fined $2,500. On appeal, defendant contends he was denied his constitutional right to a fair *Franks* hearing due to numerous prehearing errors that prevented him from adequately presenting his affirmative defense that no informant existed and hindered his efforts to impeach the officer-affiant. Specifically, defendant contends that: (1) the trial court improperly restricted him by refusing to allow defense counsel to cross-examine Officer John Matthews regarding his possible bias, interest or motive to testify falsely; (2) the trial court committed prejudicial error by denying his request for disclosure of the alleged informant's file, and the names of the two cases allegedly pending in the circuit court; and (3) the trial court committed prejudicial error by denying his request for disclosure of the alleged informant's identity.

Following his indictment in December 1990 on one count of armed violence and one count of possession of a controlled substance with intent to deliver, defendant filed several motions including a motion for discovery, a motion for a bill of particulars, a motion to suppress and a motion to compel compliance with discovery.

On February 5, 1991, defendant requested the trial court to order the State to supply him with the original copy of the complaint for search warrant since said copy was not in the court file and the copy with which defendant had been provided had allegedly been altered in the following two material respects: (1) two dates were listed, making it unclear exactly which date the alleged informant had visited defendant at 9341 S. Jeffrey Street in Chicago; and (2) the time as to when the alleged informant went to that address was not indicated. The trial court continued the matter, and defendant renewed his request on April 4, 1991. The matter was continued again after the State promised to answer defendant's bill of particulars which requested: (a) the appearance of the alleged informant in court; (b) the time of day the alleged informant allegedly purchased narcotics from defendant; (c) the names of the two cases Matthews claimed were pending in Cook County which resulted from information obtained from the same informant; and (d) the alleged informant's file.

In his motion to suppress, defendant asserted that the search of his home by police was authorized by a search warrant which was issued based on information obtained by a fictitious confidential informant and the perjured testimony of Matthews. More specifically, defendant alleged that in the complaint for search warrant, Matthews indicated that the alleged informant described defendant as being a 45-year-old man, who was 5 feet 9 inches tall, weighed 270

pounds and had a dark complexion, while at the time, defendant was actually 39 years old, 5 feet 11 inches tall, weighed 230 pounds and had a medium complexion. The search warrant allowed the police to search defendant and his home for narcotics, particularly cocaine. The warrant averred that Matthews had a conversation with a confidential informant whom he had known for more than two years who had provided him with information leading to at least two narcotics arrests in the past six months. The warrant further indicated that there were two cases currently pending which were based on information provided by the informant.

Defendant also asserted that the confidential informant could not have come to his home as alleged on November 14, 1990. He verified the accuracy of the 12 affidavits attached to his motion to suppress which accounted for his whereabouts on that date. These affidavits recited that from 6:30 a.m. to 8:40 p.m., defendant was either at or en route to or from Malcolm X College, where he was employed. Defendant's sister and mother submitted affidavits stating that from the time defendant arrived at home until the time he went to sleep at 11:30 p.m., there were no visitors at the house.

The State asserted in its answer to discovery that the alleged informant went to defendant's home at 9341 S. Jeffrey on November 14, 1990, between the hours of 6 and 10 p.m. and further responded that defendant's allegations in his motion to suppress were conclusory and factually unsupported.

Defendant sought a hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, in an effort to challenge the allegations in the search warrant and to determine whether Matthews had a reckless disregard for the truth when he completed the search warrant complaint. The trial court granted defendant's request for a *Franks* hearing, but on August 26, 1991, the date on which the hearing was scheduled, Matthews did not appear. According to the State, he was recovering from back surgery. Defendant again requested the information he sought in the bill of particulars, particularly the names of the two pending cases for which the informant had supplied information to Matthews. The State asserted that the names of the two cases allegedly pending should not be released until such time as the defense proved that Matthews was not credible. The trial court declined to rule on the release of the two case names until after it heard Matthews' testimony, but ordered the State to provide defendant with the time the alleged sale took place.

On October 8, 1991, the date on which the *Franks* hearing was rescheduled, Matthews again did not appear, and the State did not

provide a reason. Defense counsel asserted that Matthews' absence may have been the result of his continued suspension from the police department which occurred on February 5, 1991, but could offer no proof of the suspension due to the Chicago police department's failure to respond to a subpoena for Matthews' records. Although the State conceded that Matthews was presently suspended, it maintained that evidence of the suspension was irrelevant for purposes of the *Franks* hearing. Furthermore, although the State denied knowing the reason for the suspension, it speculated that it might have been due to over-medication resulting from Matthews' back surgery. The State also noted that Matthews had not returned its phone calls.

Subsequently, the State filed a motion for reconsideration asking that the trial court strike defendant's bill of particulars because the information sought was confidential. The trial court, however, denied the State's motion. When defendant asserted that the information he requested was necessary in order to effectively cross-examine Matthews at the *Franks* hearing, the trial court ordered the State to produce the case files for purposes of an *in camera* inspection to be conducted at a later date. The trial court informed defense counsel that it would view the case reports and turn them over to counsel if it found them to be relevant.

On October 23, 1991, defense counsel requested a ruling on the bill of particulars. The trial court, however, held that it would not rule on the matter until it heard Matthews' testimony, the State having asserted that Matthews was willing to testify. The *Franks* hearing was then rescheduled for November 18, 1991. On that date, Matthews again failed to appear. The State was unable to provide an explanation for his absence in light of the fact that it had spoken to Matthews on November 17 and 18 and had been informed by him that he would be in court.

On November 20, 1991, a *Franks* hearing was held. Before the hearing began, however, the State informed the court that neither it nor Matthews had the information requested by defendant. The court then ruled that defendant was entitled to the names of the two cases Matthews claimed were pending. The State argued that rather than release the two case names to defendant, it could provide the names to the trial court for an *in camera* inspection. The State could not produce them, however, at that time because it did not have the case names, the confidential informant's file or the reports pertaining to the alleged cases.

Matthews appeared and testified to virtually the same information as was contained in the search warrant. He testified that whenever an officer received information from an informant, a form was

completed which indicated whether information was received and whether the informant was paid as well as the results of the investigation. The information contained in the form was then made a part of the informant's file which was maintained by the administrative office of the organized crime division. Matthews recalled submitting such a form regarding the informant in the present case, but was unable to remember whether the informant was paid for the information he provided which led to the procurement of the search warrant and defendant's subsequent arrest. Matthews stated that he met weekly with the informant, whom he had known for over two years. He further stated that he used the informant at least twice in the six months preceding defendant's arrest, but could not remember how many times the information from the informant resulted in arrest. Matthews testified that the informant purchased narcotics from defendant at his residence during the evening of November 14, 1990. He speculated that the sale took place sometime between 7 p.m. and 10 p.m., the informant not having given him the exact time. Matthews received this information from the informant sometime between 11 a.m. and 12 p.m. on November 15, 1990. Shortly thereafter, Matthews, accompanied by the informant, drove to 9341 S. Jeffrey where the informant identified defendant's house as the place where the sale of narcotics occurred. This fact, however, was not specified by Matthews in his complaint for search warrant.

Although he never saw the informant's file, Matthews recalled that there were two cases, whose names he knew, pending in Cook County at the time he received the information from the informant pertaining to the present case. Matthews had appeared in court on these two cases which were mentioned in his affidavit, but was uncertain when he appeared. He was also uncertain whether the cases were still pending. Defense counsel tried to elicit more information regarding the two cases, and as he did so, he stated: "[t]he relevance is that if these are cases—and he [Matthews] said that they were involving search warrants, then I think the complaints for those particular search warrants would certainly have relevancy in determining whether or not he was telling the truth." The trial court, however, sustained the State's objection when defense counsel asked Matthews for the names of the two cases.

Defense counsel's attempts to elicit information during Matthews' testimony regarding his use of narcotics and the reason he was not presently assigned to duty with the police department were also thwarted. At a side bar, defense counsel asked the court to admit information regarding Matthews' drug use in light of the fact that he tested positive for cocaine and amphetamines on December 19, 1990,

and continued to test positive as late as October 1991. Matthews, who was suspended from the police force on February 5, 1991, had not been reinstated as of the date of the *Franks* hearing. The trial court denied defendant's request, accepting the State's argument that since Matthews tested positive after the subject search warrant was issued, any information pertaining to Matthews' alleged drug usage was irrelevant as to whether he "had reckless disregard for the truth when he received information from [the alleged] informant."

On December 9, 1991, the State supplied the trial court with the informant's confidential file. It did not, however, supply the court with the two pending case names. The trial court apparently assumed that the file contained the two case names. When defense counsel attempted to verify that the names were in fact included, the trial court forbade the officer who delivered the file from answering any questions as well as defense counsel from making any inquiries regarding the specific information contained in the file.

On December 11, 1991, the trial court, after conducting an *in camera* inspection of the informant's confidential file, held that no information contained in the file would be made available to defendant. Defense counsel argued that the two case names should be released because the names were public, not privileged, information which the court had previously ruled that defendant was entitled to know. The trial court then informed defense counsel that it was satisfied it had reviewed all the reports concerning the confidential informant and that it was further satisfied that Matthews had used the informant before. The court stated that it was convinced the two had a long-term relationship and that there were cases pending at the time the subject warrant was issued. It also stated that the information contained in the file could be traced to the two pending cases. In so finding, the court held that defense counsel was not entitled to a review of those reports. It refused to seal and impound the file in the event the matter was appealed. Based on its *in camera* review of the informant's files, the trial court denied the *Franks* motion.

On March 12, 1992, defendant filed a motion to compel discovery. Defense counsel argued that the State still had not complied with defendant's discovery requests and maintained that this information was needed to effectively cross-examine Matthews. The State countered that defendant was on a "discovery expedition" and was not entitled to any information regarding the informant or the two pending cases. Defense counsel asserted that the reports, affidavits or search warrants relating to the pending cases would not disclose the identity of the alleged informant. The trial court ruled that because it was satisfied that Matthews had used the informant previously, de-

fendant was not entitled to any police or informant reports. Furthermore, based on Matthews' testimony at the *Franks* hearing and its *in camera* inspection, the trial court denied defendant's motion to suppress.

The trial court subsequently granted the State's motion *in limine*, over defense counsel's objection, seeking to prevent the cross-examination of Matthews with regard to any action by the police department against him, any lawsuit he currently had pending in Federal court or any drug testing he underwent approximately one month after defendant's arrest. The trial court held that Matthews' testimony should be limited to the incident in question.

At trial, Detective Stanley A. Turner testified that on November 15, 1990, he was involved in the execution of a search warrant on a person named William and on defendant's home in the 9300 block of South Jeffrey. Defendant's sister and mother were in the home, along with a small child, when the police entered. They identified defendant's bedroom which the police then searched, discovering multiple televisions, including one large screen television, and video equipment. Turner, along with other officers, searched bins in the headboard of defendant's bed. There Matthews found, in Turner's presence, a small plastic packet of cocaine. The officers also found narcotics pipes, a triple beam scale, electronic scales, empty money bags and a canister commonly known as being used to grind down cocaine. An automatic weapon was discovered in the closet.

While the search was in progress, defendant arrived. Matthews and Turner showed defendant the search warrant and conducted a "pat down" search. Defendant was advised of his rights. He told the officers that he understood his rights, that he was embarrassed and that the cocaine and paraphernalia that the search yielded were his and not anyone else's living in the house. Turner denied having told defendant that unless he admitted that the items recovered were his, the officers "were going to arrest the people who were in the house." While being processed, defendant told the police that he lived at the Jeffrey address.

Arthur Kruski, a chemist for the Chicago police department's crime lab, testified that the previously identified packet found in the defendant's bedroom contained 1.08 grams of cocaine.

Frederick Evans testified for defendant. Evans, a swimmer on the Chicago State University team which was coached by defendant, stated that defendant used his own scales prior to and during 1989 to weigh the food his athletes consumed prior to competition. He stated that defendant conducted scientific research on the topic of weight control during the years 1978 to 1989 which was published in aca-

demic journals. Evans had seen all but one type of scale found in defendant's house. He had not, however, seen defendant use the grinder which was also recovered. After the defense rested, the parties stipulated that the $8,000 which was found on defendant was returned to him.

On appeal, defendant claims that, individually, numerous pre-hearing errors deprived him of due process of law, while cumulatively these errors deprived him of his right to present a defense.

In *Franks v. Delaware* (438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674), the United States Supreme Court held that, under certain circumstances, a defendant may be entitled to a hearing at which the veracity of sworn statements made by the police to obtain a search warrant could be challenged. (*People v. Freeman* (1992), 241 Ill. App. 3d 682, 609 N.E.2d 713.) To mandate a *Franks* hearing, a defendant must make a substantial preliminary showing that the affidavit contains a false statement which was made knowingly, intentionally or with reckless disregard for the truth. (*People v. Freeman*, 241 Ill. App. 3d 682, 609 N.E.2d 713.) The allegedly false statement must, however, be necessary for a finding of probable cause before an evidentiary hearing is required. (*People v. Freeman*, 241 Ill. App. 3d 682, 609 N.E.2d 713.) In addition, it is the veracity of the affiant-officer, not the informant, which is at issue and may be impeached. *People v. Martin* (1986), 148 Ill. App. 3d 1061, 500 N.E.2d 528.

If, after a hearing, a defendant proves that the affiant made false statements in the affidavit, either intentionally or with reckless disregard for the truth, and the false statements were necessary to establish probable cause, the search warrant should be quashed. (*People v. Elworthy* (1991), 214 Ill. App. 3d 914, 574 N.E.2d 727.) The defendant's claim of perjury must be proved by a preponderance of the evidence. (*People v. Agyei* (1992), 232 Ill. App. 3d 546, 597 N.E.2d 696.) Therefore, although an affidavit supporting a search warrant is presumed valid, a defendant has a limited right to challenge its veracity. *People v. Elworthy*, 214 Ill. App. 3d 914, 574 N.E.2d 727.

Finally, when ruling on a motion to suppress, it is the trial court's function to determine the credibility of witnesses and the weight to be accorded their testimony. (*People v. Agyei*, 232 Ill. App. 3d 546, 597 N.E.2d 696.) The trial court's findings will not be disturbed on review unless they are contrary to the manifest weight of the evidence. *People v. Agyei*, 232 Ill. App. 3d 546, 597 N.E.2d 696.

In the present case, a *Franks* hearing was held because defendant made the requisite substantial preliminary showing which he accomplished via the 12 affidavits attached to his motion to suppress which indicate that Matthews' affidavit contained false statements as

to the existence of a confidential informant, the occurrence of a narcotics sale by defendant and the physical description of defendant. After the evidentiary hearing and the trial court's *in camera* inspection of the informant's file, however, the court found that defendant had failed to meet his burden of proof. Defendant objects to the State's assertion that he received an adequate and fair *Franks* hearing because he contends the trial court did not consider all the evidence relevant to determining whether his allegations of bias or fictionalizing by Matthews were founded. We agree.

Specifically, defendant asserts that in an effort to prevail at the *Franks* hearing, he attempted to prove, by a preponderance of the evidence, his claim that Matthews' affidavit contained false statements, which were made knowingly, intentionally or with reckless disregard for the truth, by: (1) cross-examining Matthews regarding any interest, bias or motive he may have had to testify falsely; and (2) filing a bill of particulars wherein he requested: (a) the presence of the alleged informant in court; (b) the time of day the alleged informant allegedly purchased narcotics from defendant; (c) the names of the two cases Matthews claimed were pending in Cook County; and (d) the alleged informant's file. The trial court, however, severely restricted defense counsel's cross-examination of Matthews and denied each of the items requested in defendant's bill of particulars. These improper restrictions, defendant argues, deprived him of his opportunity to prove his claim of perjury, resulting in the trial court's denial of his motion to suppress which caused manifest prejudice to him.

Defendant first contends that he was improperly restricted when the trial court refused to allow defense counsel to cross-examine Matthews regarding his possible bias, interest or motive to testify falsely. Defendant argues that the trial court's restriction of his constitutional right of confrontation amounted to an abuse of the court's discretion as it caused manifest prejudice to him.

During the *Franks* hearing, the trial court prohibited defense counsel from cross-examining Matthews with regard to the reason he was currently suspended from the police department. Moreover, when the defense inquired whether Matthews' suspended status was related to his repeatedly testing positive for narcotics, the trial court sustained the State's objection and informed defense counsel that any questions regarding Matthews' drug addiction or pending Federal civil suit against the police department were irrelevant and off-limits.

Defendant contends that this proposed line of questioning was not remote or uncertain; rather, it was relevant and necessary to prove that Matthews had something to gain or lose by his testimony,

his job. Notwithstanding defendant's suspicion of Matthews' possible bias, interest or motive to testify falsely, the trial court severely restricted this line of questioning, which defendant maintains he was entitled to pursue as a matter of right. This excluded testimony, defendant argues, prevented him from proving, by a preponderance of the evidence, that Matthews' statements in the search warrant affidavit were false.

Decisions made by the trial court with regard to cross-examination will not be disturbed on appeal unless the court abused its discretion and the abuse resulted in manifest prejudice to defendant. (*People v. Brouder* (1988), 168 Ill. App. 3d 938, 523 N.E.2d 100.) Cross-examination for purposes of impeaching a witness as to his interest, bias, or motive is a matter of right and is subject only to the trial court's discretion to preclude repetitive or unduly harassing questioning. (*People v. Martinez* (1983), 120 Ill. App. 3d 305, 458 N.E.2d 104; see also *People v. Brouder*, 168 Ill. App. 3d 938, 523 N.E.2d 100.) Although the trial court has no discretion to prohibit such impeachment entirely, it can control the extent of the cross-examination, assuming a proper subject matter. (*People v. Martinez*, 120 Ill. App. 3d 305, 458 N.E.2d 104.) "[E]vidence showing bias must be direct and positive, not remote and uncertain." *People v. Brouder*, 168 Ill. App. 3d at 945-46, 523 N.E.2d at 104.

It is also well settled in Illinois that narcotics addiction has an important bearing upon the credibility of a witness, and, in this regard, counsel may use legitimate methods to attack such a witness' credibility. (*People v. Crisp* (1992), 242 Ill. App. 3d 652, 609 N.E.2d 740.) More specifically, it has been held that the question as to whether a witness is a narcotics addict at the time of testifying or at the time an event occurred is a proper subject of cross-examination. (*People v. Crisp*, 242 Ill. App. 3d 652, 609 N.E.2d 740.) Before such cross-examination may be pursued, however, counsel is required to lay a proper foundation wherein he shows that the witness is a narcotics addict. *People v. Crisp*, 242 Ill. App. 3d 652, 609 N.E.2d 740.

Further, the actual pendency of civil litigation has also been held to be a proper subject matter of cross-examination as it is relevant for purposes of showing a witness' bias or interest. *People v. Martinez*, 120 Ill. App. 3d 305, 458 N.E.2d 104.

Finally, it has been held that a defendant should be allowed during the cross-examination of an officer, presently suspended from the police force, to explore the possibility that his testimony "may have been influenced by a desire to return to active duty without further trouble and to avoid continued suspension or other disciplinary measures." *People v. Robinson* (1977), 56 Ill. App. 3d 832, 840, 371 N.E.2d 1170.

■ Based on our review of the record and the application of the foregoing legal principles to this case, we find that the trial court abused its discretion during the *Franks* hearing and in doing so committed reversible error when it prohibited defense counsel from cross-examining Matthews with regard to his alleged drug addiction.

Defendant sought to admit evidence that during a period lasting nearly one year, Matthews continuously tested positive for narcotics. Specifically, the nonadmitted evidence revealed that from December 1990 until October 1991 Matthews tested positive for cocaine and amphetamines. The admission of such evidence may have established that Matthews suffered from a continuing drug-addiction problem, one that he had been unable to overcome for almost a year. While it is possible that Matthews' drug addiction did not start until the day he was first tested, December 19, 1990, it is also possible that his addiction was firmly established well before December 1990.

Questioning Matthews regarding his narcotics addiction would not have been irrelevant, as argued by the State, repetitive or unduly harassing. Rather, evidence of Matthews' narcotics addiction was an important consideration when determining his credibility as it may have further supported defendant's allegation that Matthews was lying in his warrant affidavit. Evidence that Matthews used narcotics on either November 15, 1990, or November 20, 1991, the day of the *Franks* hearing, would have destroyed Matthews' credibility and fully impeached his testimony. Because the trial court precluded defendant from inquiring into any aspect of Matthews' drug abuse, defendant was unable to elicit any information regarding whether Matthews was under the influence of narcotics on either day. The trial court, therefore, denied defendant the opportunity to establish that there was a valid reason to doubt Matthews' testimony.

Defendant also contends that the combination of Matthews' repeated absences in court along with the knowledge that he was currently suspended from the police department for his addiction to narcotics would cause a reasonable person to speculate whether Matthews' eventual presence in court was voluntary. Defendant argues that inquiry as to Matthews' pending Federal civil suit against the police department may have uncovered evidence of improper influence generated by the State, to entice Matthews to appear and give favorable testimony at the hearing, particularly in light of the fact it failed to compel its own witness to appear on three separate occasions.

The first time Matthews failed to appear for the *Franks* hearing, defendant received information that Matthews' absence was due not to his convalescence from back surgery, but rather to his suspension

from the police department which occurred on February 5, 1991. Defendant attempted to confirm this information by subpoenaing Matthew's employment records, but the State refused to disclose them. Thereafter, Matthews was absent twice more before he finally appeared in court on November 20, 1991, at which time the *Franks* hearing finally took place.

In light of the above, we find that not having heard Matthews' response to defense counsel's questions regarding his drug addiction, his suspension from the police force and his pending civil suit against the police department, the trial court could not possibly have acquired enough information to determine Matthews' credibility. The trial court's rulings at issue demonstrate an abuse of its discretion and prejudice to defendant which defendant has sufficiently explained. There is a reasonable inference that the areas of inquiry denied to defendant during his attempt at further cross-examination of Matthews would have shed light on whether Matthews' affidavit contained false statements which were made knowingly, intentionally, or with reckless disregard for the truth. The correlation between Matthews' consistently testing positive for drugs and his previously sworn out warrant becomes clear when his testimony is examined in relation to the totality of the circumstances surrounding his eventual appearance at the *Franks* hearing. We, therefore, find that defendant was denied the opportunity to sustain his burden of proof and had he been given that chance, the trial court would have been in a better position to form an opinion as to Matthews' propensity for truthfulness.

Finally, we note, with regard to defendant's two remaining contentions, that the trial court did not commit prejudicial error when it denied defendant's request for disclosure of the alleged informant's file and the alleged informant's identity. However, with regard to defendant's request for the names of the two cases allegedly pending, we believe that, at a minimum, defendant should have been provided with these.

It has been held that without some discovery it may be difficult for a defendant to prove his challenge to a confidential informant's existence or reliability under *Franks*. (*People v. Elworthy*, 214 Ill. App. 3d 914, 574 N.E.2d 727.) One of the requirements for a subpoena for documents is that the documents must be evidentiary and relevant. (*People v. Elworthy*, 214 Ill. App. 3d 914, 574 N.E.2d 727.) A trial court's decision whether to grant discovery for a *Franks* hearing will not be disturbed on review absent an abuse of discretion. *People v. Elworthy*, 214 Ill. App. 3d 914, 574 N.E.2d 727.

■ We find that the case names at issue here were relevant for

purposes of obtaining the related complaints for search warrants which would have been helpful in determining whether Matthews was truthful when he completed his affidavit for search warrant in the present case. Without the testimony of the alleged informant at the *Franks* hearing, defense counsel required knowledge of the two case names in order to prove the existence or fabrication of the alleged informant. We believe, however, that a better alternative on remand would be to provide defendant with the affidavits from the two cases which Matthews mentioned in his affidavit for search warrant, as the court did in *People v. Elworthy.*

In *Elworthy*, after hearing the testimony of the officer-affiant, the defendant subpoenaed 43 affidavits. The court ordered the State to produce two of the affidavits, those that the officer-affiant had mentioned in his affidavit for search warrant. The judge then inspected those affidavits *in camera* and excised the portions which could have led to the identity of the informant. The two affidavits were then produced to the defendant for the hearing. When the officer-affiant was recalled as a witness, he stated that he only included the last two months of encounters to show recent reliability.

In the present case, although the State produced the confidential informant's file, the trial court never informed defendant whether the actual affidavits from the two cases Matthews alleged were pending were in fact contained in the file. Defendant was entitled to know what the trial court reviewed *in camera.* Because the State failed to produce the two case names when ordered to do so by the court, it is uncertain whether the trial court even knew whether the corresponding affidavits were actually contained in the informant's file which it reviewed.

■ With regard to defendant's request for disclosure of the informant's identity, we briefly note that, generally, the State is not required to make such a disclosure, since it is well settled that the statements made by the police officer-affiant in an affidavit for search warrant may be based upon hearsay, including an informant's tip. *People v. Johnson* (1992), 237 Ill. App. 3d 860, 605 N.E.2d 98.

We further note, however, that the State's reliance upon *People v. Gales* (1993), 248 Ill. App. 3d 204, a case in which this court denied the defendant's request for disclosure of the informant's identity, is misplaced, as it is distinguishable from the present case. Unlike the present case, the trial judge in *Gales* interviewed the confidential informant off the record, asking him questions submitted by the defense which he deemed were appropriate. The *Gales* court subsequently found that a confidential informer did exist and that he had given the affiant the information that appeared in the search

warrant in that case. (*People v. Gales* (1993), 248 Ill. App. 3d 204, 210.) In the present case, however, not only was the informant not interviewed by the trial court, but it is unclear whether the informant's file reviewed by the court *in camera* contained the names of the two cases allegedly pending as well as their corresponding affidavits. This remains true despite the fact that the trial court stated that it was satisfied that the informant had an ongoing relationship with Matthews based on its review of the informant's file.

In sum, we hold that if the trial court finds Matthews to be credible after hearing the testimony that defense counsel elicits from him on remand at the new *Franks* hearing, regarding his suspension from the police force, his narcotics addiction and his civil suit against the police department, production of the informant and disclosure of his identity and file will not be necessary. If, on the other hand, the trial court doubts the credibility of Matthews, disclosure of the informant's identity may be required for purposes of the *Franks* hearing. The decision whether to require such disclosure is within the trial court's discretion. *People v. Elworthy*, 214 Ill. App. 3d 914, 574 N.E.2d 727.

For the reasons stated herein, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for a new trial, including a *Franks* hearing.

Reversed and remanded.

RAKOWSKI and GIANNIS, JJ., concur.